Filed 10/8/13  King v. Kennedy CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KEVIN KING, Plaintiff and Appellant, v. SHAUN KENNEDY et al., Defendants and Respondents. | B235769 (Los Angeles County Super. Ct. No. BC394588) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

Gary S. Casselman for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendants and Respondents.

Plaintiff Kevin King sued the County of Los Angeles as well as Sheriff's Deputies Anthony Montes, Jason Johnson, Ryan Clinkingbread, Shaun Kennedy and Sergeant Richard Mejia[1] in connection with an incident which took place at the Men's Central Jail while plaintiff was housed there in pretrial detention. In his first amended complaint, plaintiff alleged that while he was lying on the ground incapacitated, Sergeant Mejia: "placed his knee into [p]laintiff's back, grabbed [p]laintiff's hair [and] lifted and slammed [p]laintiff's face into the floor 3 or 4 times. . . . Then, Deputy Nunez approached from [p]laintiff's left side and punched [p]laintiff in the face. Plaintiff was also hit hard by Deputy Kennedy and Deputy Clinkenbeard [sic] who kneed [p]laintiff's face causing a fracture of [p]laintiff's left [orbital bone]." Soon thereafter, while plaintiff was handcuffed and lying face down on the floor, "[p]laintiff received a vicious kick to the back of his head causing his chin to violently strike the hard floor, resulting in a fractured jaw." After the kick was delivered, plaintiff heard Kennedy say, "'[R]emember, this is our house.'"

The operative complaint alleged causes of action for battery, intentional infliction of emotional distress, violation of Civil Code section 52.1, and negligence. The case was tried by a jury which found that defendants did not "use unreasonable force in detaining and/or overcoming the resistance of" plaintiff. Plaintiff moved for judgment notwithstanding the verdict and for a new trial; both motions were denied.

Plaintiff contends Kennedy's conduct constituted excessive force as a matter of law. In addition, he challenges certain evidentiary rulings as well as the denial of his request to continue the trial until after his release from jail so that he could personally appear at trial. We affirm the judgment.

---

[1] Additional defendants were dismissed prior to trial.

## I. FACTS

The evidence introduced by plaintiff, including expert testimony, conflicted in many respects with the defense evidence. We recite the facts in the light most favorable to the judgment, in accordance with the substantial evidence standard of review. (*612 South LLC v. Laconic Ltd. Partnership* (2010) 184 Cal.App.4th 1270, 1276.)

On February 20, 2007, plaintiff's knee was scraped in a scuffle with deputies at the Men's Central Jail. He was escorted to the clinic where his knee was bandaged. He was prescribed Motrin for pain and instructed to return for care of the wound.

Two days later, plaintiff, alone and not in handcuffs, was returning to the clinic for the follow-up appointment when Kennedy saw him outside the 2500/2700 module of the Men's Central Jail. Kennedy, walking several feet behind plaintiff, asked him where he was headed. Plaintiff responded: "Medical. Why?" Kennedy told plaintiff to proceed on his pass. As plaintiff continued walking, he glanced over his should and said, "Why the fuck do you always have to side with him?" Kennedy did not understand the reference, but told plaintiff to stay quiet in the hall and proceed on his medical pass. Plaintiff turned, quickly approached the deputy, took an aggressive fighting stance, and said "'I don't have to fucking listen to you,' or something to that effect." The five foot, nine-inch, 190-pound deputy perceived the six foot, six-inch, 220-pound athletically built plaintiff as an immediate assaultive threat and pepper sprayed him in the face, in order to temporarily incapacitate him so that the deputy could gain control of plaintiff to put him in handcuffs. However, as Kennedy administered the pepper spray, plaintiff turned his head and the spray hit him in the back of the neck, producing no effect on him.

Plaintiff then advanced toward Kennedy, with both fists clenched. As plaintiff did so, Kennedy grabbed hold of him to avoid being struck and forced him to the ground. The deputy instructed plaintiff to put his hands behind his back so he could be handcuffed, but plaintiff did not comply. Once on the ground, plaintiff attempted to push himself back onto his feet, and at one point threw his left elbow backwards, striking Kennedy in the upper chest. Kennedy placed his hand on plaintiff's shoulder and his

3

knee on plaintiff's back in an attempt to hold him down, but plaintiff resisted, trying to get back on his feet. Plaintiff had his arms tucked underneath him, and was able to push up and roll his body as he delivered the elbow strike. Kennedy punched plaintiff three times to the right side of his face in an attempt to get him to stop resisting, but the blows had little effect. The deputy repeated his commands to plaintiff to stop fighting and to place his hands behind his back.

At some point, Montes and Johnson came to assist Kennedy in subduing plaintiff. All three deputies ordered plaintiff to stop fighting and place his hands behind his back. Montes punched plaintiff four times in the lower rib area to gain control of his left arm, while Johnson took a position to plaintiff's right and punched him in the lower ribs to try to get control of his right arm. Plaintiff ignored the deputies' instructions and continued to try to push himself onto his feet. As he did so, Kennedy, in self-defense, delivered knee strikes to plaintiff's face. The deputy was fearful and believed it was necessary and reasonable to deliver these blows. The deputies were then able to handcuff plaintiff.

Plaintiff was assaultive and combative throughout this encounter. The deputies' intent in striking plaintiff was not to hurt him but to obtain his compliance and gain control of the situation. At no time during the altercation did Kennedy stomp on or kick plaintiff in the head.

## II. CONTENTIONS

Plaintiff presents four issues for review on appeal: "1. Was the force used by Deputy Kennedy excessive as a matter of law? [¶] 2. Did the trial court abuse its discretion in excluding testimony by [plaintiff's] expert that [plaintiff's] version of events causing [plaintiff's] jaw fracture was the more likely one? [¶] 3. Did the trial court abuse its discretion in excluding [plaintiff's] animation exhibit? [¶] 4. Did the trial court abuse its discretion in refusing to allow [plaintiff] to come to court to testify in person and further by allowing his testimony to be given in a manner that was interrupted and clearly indicated he was in custody?"

## III.  STANDARD OF REVIEW

Plaintiff contends the evidence presented at trial regarding Deputy Kennedy's use of force requires a verdict in his favor as a matter of law.  Thus, plaintiff challenges the sufficiency of the evidence to support the verdict.  We review the record "in the light most favorable to the judgment, giving [the defendant] the benefit of every reasonable inference and resolving any conflicts in the evidence in support of the judgment."[2]  (*612 South LLC v. Laconic Ltd. Partnership, supra,* 184 Cal.App.4th at p. 1276.)  As he acknowledges, plaintiff's remaining assignments of error are subject to the abuse of discretion standard.  Under this standard, an appellate court will disturb the trial court's discretionary rulings only upon a showing of a clear abuse of discretion which results in a miscarriage of justice.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

## IV.  DISCUSSION

### 1.  Substantial evidence supports the defense verdict on plaintiff's excessive force claim.

Plaintiff argues "no reasonable officer" would have acted as Kennedy did when he kneed plaintiff in the face and broke his jaw.  However, in his initial response to plaintiff's aggressive behavior, Kennedy attempted to employ lesser uses of force, first pepper spray and then punches to the face, to overcome plaintiff's resistance and put him in handcuffs, but these maneuvers were not successful.  Neither did the punches to

---

[2] This is the same standard employed by the United States Court of Appeals Seventh Circuit in *Phillips v. Community Insurance Corporation* (7th Cir. 2012) 678 F.3d 513, which plaintiff cites in support of his contention that appellate review of a jury verdict in an excessive force case "merits plenary review."  That court stated:  "We review a district court's denial of a motion for judgment as a matter of law de novo, asking whether the evidence presented, combined with all reasonable inferences permissibly drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict."  (*Id.* at p. 519.)

plaintiffs' ribs delivered by Montes and Johnson dissuade plaintiff from continuing to fight or cause him to put his hands behind his back as instructed. Testimony of Kennedy, Montes, and Johnson was consistent—plaintiff was a large aggressive man who was extremely difficult to control.[3] In short, Kennedy was confronted with a strong, defiant inmate who refused to submit to the deputies' control. Kennedy testified he used the knee strike in self-defense and only after his other less aggressive efforts failed.

Richard Bryce, a police practices expert called by the defense, testified that the deputies' use of force was not excessive. Bryce explained that, in the jail setting, the deputies are not armed with firearms or batons as they are in field. When pepper spray is ineffective, they can only overcome an individual's resistance with their bodies. Bryce testified that the knee strikes and all other force used by the deputies was necessary and reasonable under the circumstances. There was substantial evidence the deputies did not use excessive force against plaintiff.

### 2. The trial court did not err in limiting plaintiff's expert to the opinions expressed during her pretrial deposition.

Plaintiff's excessive force case was based on his testimony that Kennedy stomped on the back of his head, causing his chin to hit the concrete floor with such force it broke his jaw. As noted above, Kennedy testified he did not kick plaintiff in the back of the head, but rather kneed him in the face, resulting in the broken jaw. Plaintiff sought to have his expert, Dr. Terri Haddix, testify that of these two versions of events, plaintiff's version was the more likely cause of his injury. Defendants objected to this testimony

---

[3] According to Montes, the pepper spray did not affect plaintiff, plaintiff was difficult to control, plaintiff took a "fighting stance," and he struck Kennedy while Kennedy was on the ground. Montes explained plaintiff did not obey commands "to stop fighting" and "stop resisting." Johnson arrived when plaintiff was engaged in the altercation with Kennedy and Montes. Johnson's initial attempts to gain control over plaintiff's arm were unsuccessful. Johnson indicated Kennedy used his knee to strike plaintiff while the officers were still attempting to control plaintiff.

6

based on *Kennemur v. State of California* (1982) 133 Cal.App.3d 907, as Dr. Haddix had not stated this opinion in her pretrial deposition.

The trial court conducted a hearing outside the presence of the jury to determine what opinions Dr. Haddix had given in her deposition. Plaintiff's counsel offered the following: "I don't think either expert in this case has given a definitive opinion one way or the other, but [Dr. Haddix] did give an opinion as to what is more likely." Counsel could not, however, point to any portion of the deposition transcript to support this assertion. The court responded, "[I]f she didn't say it was more likely in the deposition, how can she say that today?" The court continued: "[G]o to the next question. The question is (reading:) 'Do you have any other further opinions as to the mechanism of injury regarding the mandible fracture? [¶] 'Answer No.' [¶] So she's in a corner with that. So unless previous to that she gave the opinion that it's more likely, I have to, I believe, sustain the [*Kennemur*] objection . . . ."

Code of Civil Procedure section 2034.260 governs expert witness designations. "The purpose of section [2034.260] is to permit parties to adequately prepare to meet the opposing expert opinions that will be offered at trial. '"[T]he need for pretrial discovery is greater with respect to expert witnesses than it is for ordinary fact witnesses [because] . . . [] . . . the other parties must prepare to cope with witnesses possessed of specialized knowledge in some scientific or technical field. They must gear up to cross-examine them effectively, and they must marshal the evidence to rebut their opinions." [Citation.]' (*Bonds v. Roy* (1999) 20 Cal.4th 140, 147.) When an expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial." (*Jones v. Moore* (2000) 80 Cal.App.4th 557, 565.) In short, a party is entitled "to rely on the other party's expert's express representation that the opinions expressed during an expert deposition are the only ones that need be met at trial." (*Id.*, at pp. 565-566.)

In his opening brief, plaintiff acknowledges that, in her deposition, "Dr. Haddix never explicitly said that she planned to give an opinion as to the relative likelihood of

scenarios causing the jaw fracture . . . ." Indeed, Dr. Haddix testified in her deposition that plaintiff's jaw injury was caused by blunt force, and there were a number of different mechanisms that may have caused the injury, including fist strikes, a single knee strike, multiple knee strikes, or a kick or stomp to the head. She also stated that she was surprised Kennedy did not complain of pain or discomfort in his knee based on his report of how the injury occurred. Dr. Haddix was permitted to, and did, offer all of the foregoing testimony at trial.

When specifically questioned at her deposition about whether she had an opinion regarding which mechanism caused, or was more likely to have caused, plaintiff's injuries, Dr. Haddix *did not state* that it was her opinion, to a reasonable degree of medical probability, the broken jaw was more likely caused by a kick to the back of the head than by a knee to the face. Consequently, the trial court did not err in excluding Dr. Haddix's opinion concerning the likelihood that plaintiff's jaw injury was delivered by a kick or stomp to the head rather than a knee strike. (*Jones v. Moore, supra,* 80 Cal.App.4th at p. 565; see also *Kennemur v. State of California*, *supra*, 133 Cal.App.3d at p. 919 [trial court properly excluded expert testimony not disclosed prior to trial].)


3. The trial court did not err in excluding plaintiff's computer animation evidence.


Plaintiff sought to introduce a computer animation video (Exhibit 39) of animated figures acting out plaintiff's version of how his jaw was broken. The trial court excluded the video under Evidence Code section 352 because it was not a visual representation of the expert's opinion. Plaintiff challenges this ruling.

A trial court is permitted to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Courts have compared computer animations to classic forms of demonstrative evidence such as charts or diagrams that illustrate expert testimony. [Citations.] A computer animation is

8

admissible if "'it is a fair and accurate representation of the evidence to which it relates . . . .'" [Citations.] A trial court's decision to admit such demonstrative evidence is reviewed for abuse of discretion. [Citations.]" (*People v. Duenas* (2012) 55 Cal.4th 1, 20-21.)

In assessing the admissibility of Exhibit 39, the trial court stated, "I'm looking at the probative value and really ultimately a 352 analysis is how I think – is the general approach on this." The court concluded, ". . . if [Dr. Haddix's] opinion is simply it's consistent, but so is the knee to the front of the face, I don't see where the animation comes in." The court reasoned that, in the absence of an opinion that within a reasonable degree of medical certainty the cause of the broken jaw was a strike to the back of the head, "any video or animation of someone being hit [on] the back of the head is not probative because it's not part of her definitive opinion."

Plaintiff has failed to establish the trial court abused its discretion in excluding Exhibit 39. The court's evidentiary ruling is reviewed for an abuse of discretion and will not be overturned unless "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*Thompson v. County of Los Angeles* (2006) 142 Cal.App.4th 154, 168.) Plaintiff cites no appellate case which determined that a trial court abused its discretion in ruling to exclude a demonstrative computer animation at trial, much less one which was unsupported by an expert's opinion.

In any event, the exclusion of the evidence did not lead to a miscarriage of justice. (Cal. Const., art. VI, §13 [requiring a showing of a "miscarriage of justice" to warrant reversal of judgment due to trial court error]; *Cassim v. Allstate Ins. Co*. (2004) 33 Cal.4th 780, 800 [miscarriage of justice means there is a reasonable probability of a more favorable result to the appealing party in the absence of the error].) Dr. Haddix was permitted to offer her opinions at trial, including her opinion that plaintiff's jaw could have been fractured by a kick to the back of the head as plaintiff alleged. There is nothing in the record to suggest it is reasonably probable the result of the trial would have been different if the animation had been admitted.

9

4.  The trial court did not abuse its discretion in denying plaintiff's request to continue the trial, or to otherwise accommodate his in-custody status.

Finally, plaintiff relies on two cases, *Payne v. Superior Court* (1976) 17 Cal.3d 908 and *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, to argue the trial court violated his constitutional right to meaningful access to the courts by "refusing to allow" him to testify in person and by "allowing" his testimony to be given in a manner that was interrupted and clearly indicated he was in custody.  We see no violation.

In *Payne v. Superior Court, supra,* 17 Cal.3d at pages 924-925, our Supreme Court reviewed an indigent inmate's defense of an action against his property, and his right to access to the courts.  The court stated that with regard to in-court appearances and testimony, the appointment of counsel will in most cases suffice to ensure compliance with a prisoner's due process rights.  (*Id.* at p. 924.)  The court recognized the trial court has no authority to command the Department of Corrections to transport a prisoner to a civil courtroom.  (*Ibid.*)  Consequently, a trial court may properly employ other alternatives to an inmate's appearance in court, including recording his testimony or, if feasible, holding a portion of the trial at the prison.  (*Id*. at p. 925.)

*Wantuch v. Davis, supra,* 32 Cal.App.4th at page 794, also addresses the rights of indigent inmates' access to the courts.  There, the court specifically stated that a prisoner may not compel his appearance in court, and that "the trial court determines the appropriate remedy to secure access in the exercise of its sound discretion."  (*Id.* at p. 794; see also *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1482-1483 [a trial court has discretion to use modern electronic means for an inmate to testify at trial].)  Among the means available to secure access to the courts for an indigent incarcerated litigant are appointment of counsel; depositions in lieu of a personal appearance; and testimony given via closed circuit television or other electronic media.  (*Wantuch v. Davis, supra,* 32 Cal.App.4th at pp. 792-793; accord *Apollo v. Gyaami, supra,* 167 Cal.App.4th at pp. 1482-1483.)

10

Here, plaintiff was represented by counsel and was thus not denied access to the courts. In addition, the trial court arranged for plaintiff to testify via a live-feed video from the Men's Central Jail. He thus had a full and fair opportunity to present his case to the jury.

Plaintiff also cites as error the denial of his request to continue the trial until after his release from jail so that he could personally appear at trial. The contention is unavailing.

"The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. [Citation.] The burden rests on the complaining party to demonstrate from the record that such an abuse has occurred." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984-985.)

On May 4, 2011, the first day of trial, the court queried whether the parties were ready to proceed.[4] Plaintiff's lawyer answered, "Other than the fact that my client will not be here." Counsel then objected to the trial proceeding without the presence of his client, who was incarcerated "just a few blocks away" in the county jail. Counsel represented that plaintiff was scheduled to be released from custody on July 28, and informally asked for an indefinite continuance until sometime after that date. The court responded, "For various reasons this case is much too old and needs to proceed."

This lawsuit was originally scheduled to be tried in September 2009 but was continued multiples times. Plaintiff had been granted a trial continuance due to his incarceration on two prior occasions, yet was again incarcerated when the matter was

_____

[4] Plaintiff requests this court, pursuant to Evidence Code sections 452 and 459, to take judicial notice of the court's May 4, 2011 trial calendar. Because the trial calendar is not relevant to the issue presented on appeal, we deny the request. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1326.)

11

called for trial in May 2011. Thus, there was no assurance that plaintiff would be free from custody on any particular date in the future. Moreover, plaintiff did not make his final, informal request to continue the trial until the first day of trial. Plaintiff cites no authority which supports his contention that a trial court abuses its discretion by refusing to continue a trial under these circumstances. We conclude the court acted well within its discretion in refusing to further delay the trial.

Finally, plaintiff argues the manner in which his testimony was presented to the jury – by live-feed video with jail-related announcements throughout and with numerous technological mishaps interrupting the audio – resulted in "inevitable prejudice" to him. However, plaintiff presents no legal argument and cites no authority, to explain the basis for his contention that the judgment must be reversed as a result of the presentation of his testimony. Consequently, the claim is waived, and we need not consider it. (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799-800.)

## V.  DISPOSITION

The judgment is affirmed. Defendants are to recover their costs on appeal from plaintiff.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KUMAR, J.[*]


We concur:


TURNER, P. J.                                    KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.