[No. B079141. Second Dist., Div. Five. Feb. 24, 1995.]

ALBERT JOHN WANTUCH, Plaintiff, Cross-defendant and Appellant, v. DANIEL GODFREY DAVIS et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

Albert John Wantuch, in pro. per., for Plaintiff, Cross-defendant and Appellant.

Holland & Donnelly and Kenneth D. Holland for Defendants, Cross-complainants and Respondents.

**OPINION**

**GRIGNON, J.**—A prison inmate brought a pro se action against his former criminal defense attorney and others, alleging legal malpractice and other

causes of action. The former attorney cross-complained for attorney fees arising out of the prior representation. When the prisoner failed to appear at a status conference, the trial court denied his motion for appointed counsel, denied his request to be transferred from state prison to court, struck his complaint and answer to the cross-complaint and entered judgment against him. We conclude the trial court abused its discretion in striking the prisoner's pleadings and entering judgment against him. We reverse and remand to the trial court for further proceedings consistent with the prisoner's right of access to the courts.

### FACTS AND PROCEDURAL BACKGROUND[1]

Albert John Wantuch hired Attorney Daniel Godfrey Davis to represent him against criminal charges. A written fee agreement obligated Wantuch to pay Attorney Davis "a flat fee of $150,000 for [Attorney Davis's] representation of [Wantuch] through the dismissal of criminal charges, acquittal of [Wantuch] at trial, filing of appropriate Notice of Appeal or termination of the Agreement, whichever should occur soonest." Wantuch represented in the fee agreement that he owned real property located at 7720 Ramish in Bell Gardens. Funds from the sale of the Ramish property were to be used to pay the attorney fees; a promissory note, deed of trust and grant deed secured the payment.

After a preliminary hearing, the criminal charges were dismissed, but refiled. After a second preliminary hearing, Wantuch was held to answer. Wantuch was represented by Attorney Davis at both preliminary hearings, but by the public defender at trial. Wantuch was convicted and sentenced to state prison for 66 years.

On May 26, 1992, Wantuch sued Attorney Davis for legal malpractice. The complaint also asserted causes of action for fraud, conversion and quiet title against Attorney Davis; a realtor, Steve Cooper; and Bell Gardens Escrow. Bell Gardens Escrow answered. Wantuch filed a lis pendens on the Ramish property and dismissed the quiet title cause of action. Attorney Davis answered.

On November 17, 1992, default was entered against Cooper. Wantuch filed an at-issue memorandum. Attorney Davis moved to strike the at-issue memorandum and remove the case from the civil active list on the ground of possible settlement. Wantuch opposed the motion to strike the at-issue memorandum and filed a motion requesting that he be transferred from state prison to attend all hearings in the case.

On December 17, 1992, Wantuch's request to be transferred from state prison and Attorney Davis's motion to strike the at-issue memorandum were

---

[1]We have taken judicial notice of the superior court file.

denied. Attorney Davis's motion to file a cross-complaint was granted on January 8, 1993. The cross-complaint alleged causes of action against Wantuch for breach of the attorney fee agreement, quantum meruit and quiet title. Wantuch's motion to quash service of the cross-complaint was denied on March 5, 1993. Wantuch answered the cross-complaint on April 1, 1993.

Wantuch actively participated in the prosecution of the action. He gave notice of status conferences, propounded interrogatories to Attorney Davis and Cooper, moved to compel answers to interrogatories when responses were not forthcoming, withdrew his discovery motion after receiving responses, requested copies of the superior court file and filed a peremptory challenge to the trial judge pursuant to Code of Civil Procedure section 170.6. Throughout the proceedings, the trial court was aware that Wantuch was incarcerated.

The trial court ordered Wantuch to give notice of a status conference to be held on May 27, 1993. The order stated the matter had been assigned to a particular trial judge under the Trial Court Delay Reduction Rules and warned of possible sanctions for failure to appear, including striking of pleadings and entry of judgment. Wantuch gave notice of the status conference, which reiterated the assignment to a particular trial judge and the possible sanctions for failure to appear. The status conference was held on May 27, 1993; Attorney Davis and Bell Gardens Escrow appeared; Wantuch did not appear. As a result of Wantuch's nonappearance, a further status conference and hearing on an order to show cause for failure to prosecute were set for July 1, 1993. Wantuch was served in state prison with a copy of the minute order.

On June 15, 1993, Wantuch requested appointment of counsel on the ground he was an indigent prison inmate serving a 66-year term. Wantuch stated that if counsel were not appointed, he would "need a court order requiring him to be released for his court appearance . . . ." On July 1, 1993, Attorney Davis moved to expunge the lis pendens and for judgment. On that same date, the status conference was held; Wantuch again did not appear. Wantuch's request for appointment of counsel was denied, the lis pendens was expunged, Wantuch's complaint and answer to the cross-complaint were stricken and judgment was entered against Wantuch on the complaint. On the cross-complaint, Attorney Davis was awarded $81,771.85, in addition to contractual attorney fees as the prevailing party.

Wantuch filed a timely notice of appeal.[2]

---

[2]Attorney Davis and Cooper have not appeared on appeal.

DISCUSSION

*Meaningful Access to the Courts*

In this case, we are concerned with the nature and extent of a prisoner's right of access to the civil courts. ■ An indigent prisoner who is a defendant in a bona fide civil action threatening his or her personal or property interests has a federal and state constitutional right, as a matter of due process and equal protection, of meaningful access to the courts in order to present a defense. (*Yarbrough* v. *Superior Court* (1985) 39 Cal.3d 197, 203-207 [216 Cal.Rptr. 425, 702 P.2d 583]; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 913-919, 924 [132 Cal.Rptr. 405, 553 P.2d 565]; Annot., Inmate's Appearance-Civil Trials (1990) 82 A.L.R.4th 1063, 1071-1073.) A prisoner also has a statutory right under Penal Code section 2601, subdivision (e) to initiate civil actions.[3] In the case of an indigent prisoner initiating a bona fide civil action, this statutory right carries with it a right of meaningful access to the courts to prosecute the action. (Cf. *Bounds* v. *Smith* (1977) 430 U.S. 817 [52 L.Ed.2d 72, 97 S.Ct. 1491].) A prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests.

Meaningful access to the courts is the "keystone" of an indigent prisoner's right to defend against and prosecute bona fide civil actions. (Pen. Code, § 2601, subd. (e); *Yarbrough* v. *Superior Court, supra,* 39 Cal.3d at pp. 200-201.) Meaningful access to the courts by an indigent prisoner "does not necessarily mandate a particular remedy" to secure access. (*Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 923.)

■ Remedies to secure access may include: (1) deferral of the action until the prisoner is released (*Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 925); (2) appointment of counsel for the prisoner (*id.* at p. 924; *Yarbrough* v. *Superior Court, supra,* 39 Cal.3d at pp. 200-201); (3) transfer of the prisoner to court (Pen. Code, §§ 1567, 2620);[4] (4) utilization of depositions in lieu of

---

[3]Penal Code section 2601 states in part: "Subject only to the provision of that section, each person described in Section 2600 [deprivation of rights to prisoners] shall have the following civil rights: [¶] (e) To initiate civil actions . . . ."

[4]Penal Code section 1567 reads in part: "When it is necessary to have a person imprisoned in the state prison . . . brought before a court sitting in another county, an order for that purpose may be made by the court and executed by the sheriff of the county where it is made. The order shall be signed by the judge or magistrate and sealed with the seal of the court, if any."

Penal Code section 2620 reads in part, "When it is necessary to have a person imprisoned in the state prison brought before any court to be tried for an offense . . . , or for the purpose

personal appearances (Code Civ. Proc., § 1997; Pen. Code, §§ 2622-2623; *In re Bagwell* (1938) 26 Cal.App.2d 418, 420 [79 P.2d 395]); (5) holding of trial in prison (*Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 925); (6) conduct of status and settlement conferences, hearings on motions and other pretrial proceedings by telephone (cf. *In re Grimes* (1989) 208 Cal.App.3d 1175, 1182-1183 [256 Cal.Rptr. 690]); (7) propounding of written discovery; (8) use of closed circuit television or other modern electronic media; and (9) implementation of other innovative, imaginative procedures (Code Civ. Proc., § 128, subd. (a)(3), (a)(5);[5] cf. *Hernandez* v. *Whiting* (9th Cir. 1989) 881 F.2d 768, 770-771; *Poole* v. *Lambert* (11th Cir. 1987) 819 F.2d 1025, 1028).

In determining the appropriate remedy to secure access, the trial court should consider the nature of the action, the potential effect on the prisoner's property, the necessity for the prisoner's presence, the prisoner's role in the action, the prisoner's literacy, intelligence and competence to represent himself or herself, the stage of the proceedings, the access of the prisoner to a law library and legal materials, the length of the sentence, the feasibility of transferring the prisoner to court and the cost and inconvenience to the prison and judicial systems. (*Yarbrough* v. *Superior Court, supra,* 39 Cal.3d at pp. 204, 206; *Payne* v. *Superior Court, supra,* 17 Cal.3d at pp. 923-925; 2 Mushlin, Rights of Prisoners (2d ed. 1993) § 11.11, pp. 80-82; cf. *Holt* v. *Pitts* (6th Cir. 1980) 619 F.2d 558, 562, affd. 702 F.2d 639.)

A prisoner does not have the right to any particular remedy. A prisoner may not, for example, compel a trial court to appoint counsel. (Cf. *Hernandez* v. *Whiting, supra,* 881 F.2d at pp. 770-771; *Poole* v. *Lambert, supra,* 819 F.2d at p. 1028.) The right of an indigent prisoner to appointed counsel in a civil action arises only when there is a bona fide threat to his or her personal or property interests and no other feasible alternative exists. (*Yarbrough* v. *Superior Court, supra,* 39 Cal.3d at pp. 200-201; *Payne* v. *Superior Court, supra,* 17 Cal.3d at pp. 924-925; *County of Santa Clara* v. *Superior Court* (1992) 2 Cal.App.4th 1686, 1692-1693, fn. 6 [5 Cal.Rptr.2d 7]; cf. *Jara* v. *Municipal Court* (1978) 21 Cal.3d 181, 186 [145 Cal.Rptr.

---

of hearing a motion or other proceeding . . . an order for his temporary removal from said prison . . . must be made by the superior court . . . ."

[5] Code of Civil Procedure section 128, subdivision (a)(3) and (a)(5) read in part: "(a) Every court shall have the power to do all the following: [¶] (3) To provide for the orderly conduct of proceedings before it, or its officers. [¶] (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

847, 578 P.2d 94].)[6] Nor may a prisoner ordinarily compel his or her appearance in court. (*Payne* v. *Superior Court, supra,* 17 Cal.3d at pp. 926-927; cf. *Bledstein* v. *Superior Court* (1984) 162 Cal.App.3d 152, 168 [208 Cal.Rptr. 428]; cf., e.g., Pen. Code, § 2625 [prisoners have right to personally appear in cases involving parental or marital rights].)

■ The trial court determines the appropriate remedy to secure access in the exercise of its sound discretion. (*Yarbrough* v. *Superior Court, supra,* 39 Cal.3d at pp. 200, 207; *Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 927.) The exercise of the trial court's discretion will not be overturned on appeal "unless it appears that there has been a miscarriage of justice." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

*Abuse of Discretion*

Wantuch failed to appear at a status conference of which he had notice. As a result of his nonappearance, the trial court ordered a further status conference and a hearing on an order to show cause for failure to prosecute. Wantuch informed the trial court he was serving a lengthy state prison sentence and requested appointment of counsel or transfer to court. Wantuch did not appear at the further status conference and hearing on the order to show cause. The trial court struck Wantuch's pleadings and entered judgment against him.

■ Trial courts are responsible for the monitoring of civil cases for the purpose of expediting them through the system. (*Youngworth* v. *Stark* (1991) 232 Cal.App.3d 395, 401 [283 Cal.Rptr. 668]; *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 498 [256 Cal.Rptr. 296].) A status conference is one of the tools used by trial courts to monitor the proceedings. At a status conference, discussions are held concerning arbitration, transfer to municipal court, regulation of discovery, bifurcation, settlement and trial setting. Counsel and in propria persona litigants are required to be present. (Super. Ct. L. A. County Rules, rule 7.9.)

■ In order to facilitate the expeditious processing of civil cases, parties may be sanctioned for failure to comply with delay-reduction rules or court

---

[6]The courts' power to appoint counsel is independent of their power to compensate appointed counsel. (*Jara* v. *Municipal Court, supra,* 21 Cal.3d at p. 184; *Payne* v. *Superior Court, supra,* 17 Cal.3d at p. 920, fn. 6.) Courts do not have the power to require the expenditure of public funds to compensate appointed counsel for indigent prisoners in civil actions. (*Jara* v. *Municipal Court, supra,* 21 Cal.3d at p. 184; *County of Santa Clara* v. *Superior Court, supra,* 2 Cal.App.4th at p. 1694; *County of Fresno* v. *Superior Court* (1978) 82 Cal.App.3d 191, 195 [146 Cal.Rptr. 880].)

orders. (Gov. Code, former § 68609, subd. (d); Code Civ. Proc., § 575.2; Cal. Rules of Court, rule 227; Super. Ct. L. A. County Rules, rules 7.7, subd. (c), 7.9, 7.13.) These sanctions may include terminating sanctions, such as the striking of pleadings. (*Ibid.*) In propria persona litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know the delay-reduction rules. (*Rappleyea* v. *Campbell* (1994) 8 Cal.4th 975, 984-985 [35 Cal.Rptr.2d 669, 884 P.2d 126]; *Lawrence* v. *Superior Court* (1988) 206 Cal.App.3d 611, 619, fn. 4 [253 Cal.Rptr. 748]; *Bistawros* v. *Greenberg* (1987) 189 Cal.App.3d 189, 193 [234 Cal.Rptr. 377].)

However, the delay-reduction rules and the policy of expeditious processing of civil cases do not override, in all situations, the trial court's obligation to hear cases on the merits. (*Moyal* v. *Lanphear, supra,* 208 Cal.App.3d at p. 503; cf. *Estate of Meeker* (1993) 13 Cal.App.4th 1099, 1105-1106 [16 Cal.Rptr.2d 825]; *Youngworth* v. *Stark, supra,* 232 Cal.App.3d at p. 401.) Preventing parties from presenting their cases on the merits is a drastic measure; terminating sanctions should only be ordered when there has been previous noncompliance with a rule or order and it appears a less severe sanction would not be effective. (Gov. Code, § 68609, subd. (d); *Marriage* v. *Keener* (1994) 26 Cal.App.4th 186, 194 [31 Cal.Rptr.2d 511]; *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d at p. 503.) Terminating sanctions should not be ordered as a first response when noncompliance is through no fault of the party. (*Ibid.*)

■ In this case, the trial court imposed terminating sanctions solely because of Wantuch's failure to appear at the status conference. Wantuch's nonappearance was not wilful, but was solely the result of his imprisonment. The status conference could have been conducted by written correspondence or by telephone. In all other respects, Wantuch had diligently prosecuted the matter. He had timely filed and served the complaint, discussed settlement, answered the cross-complaint, sought entry of default where appropriate, filed motions, propounded discovery, moved to compel discovery and filed an at-issue memorandum. The case was little more than a year old. We conclude the trial court abused its discretion.[7]

*Remand*

This matter must be returned to the trial court for further proceedings consistent with Wantuch's right of access to the civil courts. Wantuch's

---

[7]Because we find the trial court abused its discretion in striking Wantuch's pleadings and entering judgment against him, we need not reach other grounds raised by Wantuch for reversal.

incarceration may not deprive him of meaningful access to the courts if he is indigent and the litigation involves a bona fide threat to his property interests. On remand, the trial court must first determine whether Wantuch is in fact indigent. It is not entirely clear from the record that Wantuch is indeed indigent. He appears to be so, based on his representation in the criminal case by the public defender, his lengthy prison sentence, his pro se status in this case and his request for appointment of counsel. The trial court must make this determination after inquiring as to Wantuch's financial ability to retain counsel.

Next, the trial court must determine whether the lawsuit is a bona fide action threatening Wantuch's property interests. Wantuch's complaint in this case is a legal malpractice action involving a lien on or transfer of real property. On its face, it appears to be a legitimate controversy, at least as to Attorney Davis. The cross-complaint against Wantuch involves a substantial amount of money and an interest in real property. We leave this determination to the sound discretion of the trial court.

If the trial court finds that Wantuch is indigent and a party to a bona fide civil action threatening his property interests, Wantuch's status as a prisoner may not deprive him of meaningful access to the courts. In arriving at the appropriate remedy to secure access, the trial court should consider the factors outlined in this opinion and exercise its discretion to determine the appropriate remedy or remedies to effectuate Wantuch's constitutional and statutory rights of meaningful access to the courts to prosecute his complaint and defend against the cross-complaint.

For example, Wantuch appears to be literate and intelligent. The number and quality of the pleadings and motions filed with the trial court (as well as this court) demonstrate an understanding and knowledge of the process, excellent ability to read and comprehend, reasonable capacity to write coherently and effectively and significant competence to represent himself. Wantuch apparently has access to a law library and to the materials necessary to file pleadings and motions with the court. Moreover, nothing in the record indicates the infeasibility of transferring Wantuch to court for those proceedings at which his appearance is necessary. The trial court may conclude that Wantuch is well able to represent himself in this matter, pretrial proceedings can be effectively conducted in writing or by telephone and Wantuch need be transferred from state prison to court only for the actual trial.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order striking Wantuch's complaint and answer to the cross-complaint. The matter is remanded to the trial court for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

Turner, P. J., and Armstrong, J., concurred.