Filed 5/6/14  Wynn v. Affue CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| DOUGLAS R. WYNN,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>THEODORE AFFUE et al.,<br><br>        Defendants and Respondents. | D063808<br><br><br>(Super. Ct. No. ECU05908) |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

Douglas R. Wynn, in pro. per., for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris, William A. Miller for Defendants and Respondents.

Douglas R. Wynn, a prison inmate, appeals a judgment granting respondents Theodore Affue, M.D. and Theodore Affue, M.D., Inc.'s (collectively Dr. Affue) motion

for nonsuit after Wynn failed to appear telephonically at a scheduled motion hearing or present an offer of proof regarding his professional negligence claim. Wynn contends the trial court denied him meaningful access to the court by failing to make a finding that his failure to appear was willful. We affirm the judgment.

## BACKGROUND[1]

In June 2010, Wynn sued Dr. Affue for negligence, alleging he had acted below the standard of care in using "hair-bearing" tissue when performing a urethroplasty on Wynn. Wynn alleges he suffered harm, including pain, scarring and disfigurement of his penis and genital area.

In April 2012, Dr. Affue moved for summary judgment. Wynn opposed it on various grounds, including that the doctrine of res ipsa loquitur applied, and expert witness testimony regarding causation of his injury was not necessary because of the nature of the injury. The court denied the motion, but did not decide the issue of res ipsa loquitur although it stated parenthetically that it would have found res ipsa loquitur inapplicable. In October 2012, the court denied Dr Affue's second summary judgment motion.

In October 2012, Wynn wrote the trial court a letter regarding his difficulties contacting the court telephonically via a "Court Call" service: "I would like for the Court to know that I cannot make any telephone calls to the Court or anyone pertaining to this

---

[1] We grant Dr. Affue's motion to augment the record on appeal to include transcripts of court hearings held in April and December 2012. The record on appeal does not include a copy of Wynn's complaint. We rely on Wynn's opposing summary judgment papers and Dr. Affue's trial brief for background regarding the parties' claims.

case through my correctional counselor without a Court Order. Not having access to a telephone has hampered my ability to produce the required expert testimony to affirmatively establish that Dr. Affue's treatment of myself . . . fell below the standard of care, and, further, that any alleged below-standard care caused [my] injuries."

During a December 4, 2012 telephonic trial management conference held one day before trial was scheduled to begin, Wynn informed the court he was not ready for trial because he had failed to obtain an expert medical witness despite having spoken to someone who was noncommittal regarding whether he would testify. Wynn had scheduled another appointment with the potential expert within approximately one week. The court continued the hearing until December 18, 2012. It advised Wynn he had to make an opening statement and offer of proof regarding his negligence claim on that day, admonishing him that otherwise he risked a nonsuit.

The court also advised Wynn to give prison authorities three days notice for them to schedule the telephonic trial management conference through Court Call. Wynn offered to send the court and defense counsel a copy of his opening statement in advance, but the court ruled that was unnecessary: "You don't have to do that. You can do it orally on [December] 18th on the telephone. . . . That would give you more time, because you're going to need to talk to your doctor before that." Before ending the December 4, 2012 telephone conference, the trial court permitted Wynn to speak with the court clerk to obtain the phone number for contacting Court Call.

At the December 18, 2012 trial management conference, Wynn did not appear telephonically; therefore, the court tentatively granted Dr. Affue's oral motion for

3

nonsuit, noting, "We've received no communication from Mr. Wynn. We've been checking around all morning with the Court Call, that sort of thing." Relying on California case law requiring it to weigh the meritoriousness of a prisoner's claim, the court explained its ruling: "Mr. Wynn has made no offer of proof that he can present any evidence regarding . . . conduct falling below the standard of care . . . . [¶] . . . [¶] . . . I cannot say that Mr. Wynn's case is frivolous, but what I can say is that he's been given ample opportunity to present his offer of proof that, would, in my view, justify transporting him to the trial. [¶] And I must say, in Mr. Wynn's defense, he was quite forthright at our last hearing that he did not, at the last hearing, have such evidence. He had secured no expert witness, and he was going to attempt to do so, in the intervening time period. And my assumption from his lack of presence today is that he was unable to do so, which, you know, I have no doubt he's impecunious, but there's nothing the court can do about that."[2]

The court further explained it was impractical to transport Wynn from San Quentin prison in Northern California to Imperial County "for the sole purpose of having

---

[2]     Dr. Affue's trial brief framed the operative issue regarding causation of Wynn's injuries: "[Wynn] is lacking *any* competent, and admissible, expert testimony to establish that any purported negligence of Dr. Affue was the legal cause of [Wynn's] claimed injuries. Although [Wynn] bears the burden of proof, evidence at time of trial would further establish [Wynn's] purported complications and alleged injuries were known complications that occur in the absence of any negligence. [¶] Specifically, testimony by [defense expert] Dr. Boyd will establish that recurring stricture disease is a known complication that occurs in the absence of any negligence. [Wynn] presented to Dr. Affue with pre-existing stricture disease and repetitive trauma to his urethra. Although a urethroplasty was performed, attempting to resolve [Wynn's] pre-existing stricture disease, [Wynn] experienced recurring stricture disease."

him disclose that he has no evidence to support his claim of medical negligence. And I certainly do not believe that we are required to transport him and impanel a jury for the mere ceremony of having him make an opening statement."

Under California Rules of Court, rule 3.1312, the court required Dr. Affue to send Wynn a copy of a proposed order granting the nonsuit and dismissing the case, explaining that this procedure would permit Wynn's input in the final order: "And make no mistake, I'm going through that process because it builds in a certain amount of delay where [Dr. Affue will] have to send [the proposed order] to Mr. Wynn, and he'll get to look at it and that sort of thing, and maybe that will flush out a problem."

On January 22, 2013, the court received Wynn's letter explaining that prison authorities did not permit him to access Court Call on December 18, 2012, because he lacked documentation from the court ordering his telephonic appearance. Wynn also claimed that at the December 4, 2012 hearing, the court clerk had not given him contact information for Court Call.

In the same letter, Wynn set forth his offer of proof, asserting he is entitled to a presumption of negligence under the doctrine of res ipsa loquitur: "The implantation of tissue inside of [his] urethra, while he is under anesthetic, is something over which [he] ha[d] absolutely no control. Nor did [he] have any control over which kind of tissue Dr. Affue chose to graft into his urethra. [¶] It is obvious that the growth of hair, and subsequent scarring and other complications, with regard to Mr. Wynn's urethra were caused by the procedure performed by Dr. Affue entirely outside of the control of Mr. Wynn."

5

On February 13, 2012, the court entered final judgment in Dr. Affue's favor.

DISCUSSON

Relying on this court's holding in *Jameson v. Desta* (2009) 179 Cal.App.4th 672, 676 (*Jameson*), Wynn contends the trial court erroneously granted the nonsuit motion without making a finding that he had willfully failed to appear telephonically at the December 18, 2012 case management conference. He attaches to his opening appellate brief a document that includes a statement by the litigation coordinator of San Quentin prison, stating, "I have been assigned to this office since [December 3, 2012] and I have no record of an order from the court or a [C]ourt [C]all confirmation in regard to [Wynn] during that time period."

A defendant is entitled to nonsuit if the trial court determines as a matter of law that the plaintiff's evidence, when viewed most favorably to the plaintiff under the substantial evidence test, is insufficient to permit a jury to find in his favor. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 262-263.) We review the trial court's order by using the same test as the trial court, and will affirm that order so long as there was substantial evidence that could support a judgment for plaintiff. (*Ibid.*; *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, 273.)

An indigent prisoner who is a defendant in a bona fide civil action threatening his or her personal or property interests has a federal and state constitutional right, as a matter of due process and equal protection, of meaningful access to the courts in order to present a defense. (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 203-207; *Payne v. Superior Court* (1976) 17 Cal.3d 908, 913-919, 924.) A prisoner also has a statutory

6

right under Penal Code section 2601, subdivision (e) to initiate civil actions. In the case of an indigent prisoner initiating a bona fide civil action, this statutory right carries with it a right of meaningful access to the courts to prosecute the action. (Cf. *Bounds v. Smith* (1977) 430 U.S. 817.) "A prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792 (*Wantuch*).)

In order to ensure access to the court for an incarcerated party, remedies may include "conduct of status and settlement conferences, hearings on motions and other pretrial proceedings by telephone." (*Wantuch*, *supra*, 32 Cal.App.4th at pp. 792-793.) A trial court must provide an appropriate method for that access, which may include telephonic hearings or appearances by written communication. (See *Jameson*, *supra*, 179 Cal.App.4th at pp. 674-675, 684; *Wantuch*, *supra*, at pp. 792-793.) " 'The exercise of the trial court's discretion will not be overturned on appeal 'unless it appears that there has been a miscarriage of justice.' " (*Wantuch*, *supra*, at p. 794.)

In *Jameson*, we found error because the trial court had not ensured the appellant was able to exercise his right of meaningful access to the court. Specifically, the trial court had not inquired regarding prison authorities' failure to permit the plaintiff to appear telephonically by Court Call. (*Jameson*, *supra*, 179 Cal.App.4th at pp. 682-683.) We noted the trial court's discretion did not extend to its decision "to choose *no remedy* in cases where the prisoner's civil action is bona fide and his or her access to the courts is being impeded." (*Id*. at p. 683.)

7

By contrast, this case does not turn on whether the court erred in not inquiring if Wynn's failure to appear was willful; rather, it turns on whether the court permitted him meaningful access to present his offer of proof. We conclude it did. The court received Wynn's letter setting forth his offer of proof regarding his negligence claim and afterwards it determined he could not defeat the nonsuit motion. It is a well-settled principle that " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown [by the appellant].' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We conclude the trial court exercised its sound discretion in relying on Wynn's arguments in that letter, and there was no miscarriage of justice.

We note that in his offer of proof in the trial court, and in his appellate argument, Wynn has not claimed that the trial court deprived him of an opportunity to find an expert witness. Rather, he has argued he need not obtain an expert witness regarding causation because res ipsa loquitur applies. However, the trial court had stated that if required to address that argument, it would reject it. California case law supports the trial court's ruling. In a medical malpractice action, a plaintiff must prove the defendant's negligence was a cause in fact of injury. (*Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1502.) In general, the question "[w]hether a defendant's conduct actually caused an injury is a question of fact [citation] that is ordinarily for the [trier of fact] [citation]." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252.) In certain cases in which "the complexity of the causation issue is beyond common experience, expert testimony is

8

required to establish causation." (*Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363, 1373.) For example, in cases involving complicated medical causation issues, the standard of proof generally required is a reasonable medical probability based on competent expert testimony that the defendant's conduct contributed to the plaintiff's injury. (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 976, fn. 11.)

"The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based [on] competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion. There can be many possible 'causes,' indeed, an infinite number of circumstances [that] can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402-403; accord, *Osborn v. Irwin Memorial Blood Bank*, *supra*, 5 Cal.App.4th at p. 253, [although plaintiff need not eliminate any possibility that defendant's conduct was not a cause, he must introduce " 'evidence from which reasonable [people] may conclude that it is more probable that the event was caused by the defendant than that it was not' "].) Therefore, in those cases in which the issue of causation is beyond common lay experience, "causation must be founded upon expert testimony and cannot be inferred from the [trier of fact's] consideration of the

totality of the circumstances unless those circumstances include the requisite expert testimony on causation." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1385.)

On this record, proof of causation was beyond lay experience, thus requiring expert testimony. In fact, the defense's expert was prepared to testify regarding other likely causes of Wynn's injuries and Dr. Affue's adherence to the standard of care. Therefore, Wynn's bare assertion that res ipsa loquitur applied was an insufficient offer of proof regarding causation. Finally, it bears repeating that pro per litigants are held to the same standards as other litigants: "In propria persona litigants are entitled to the same, but no greater, rights than represented litigants." (*Wantuch*, *supra*, 32 Cal.App.4th at p. 795.) The trial court did not err in granting nonsuit.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.