Filed 8/15/16  Marriage of Duvigneaud CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re the Marriage of TERESA and KIRBY DUVIGNEAUD. | B258016 (Los Angeles County Super. Ct. No.  BD515779) |
| TERESA DUVIGNEAUD, | |
| Respondent. | |
| v. | |
| KIRBY DUVIGNEAUD, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.
Armen Tamzarian, Judge.  Affirmed.

Kirby Duvigneaud, in pro. per., for Appellant.

No appearance for Respondent.

The proceedings below dissolved the marriage of appellant Kirby Duvigneaud and respondent Teresa Duvigneaud. Appellant, who represented himself below and continues to do so on appeal, contends the trial court erred in denying his motion seeking credit for funds obtained from the sale of his separate property in the division of the community estate, and that the court denied him due process by cutting off his telephonic appearance before the hearing on his motion concluded. We find no error or denial of due process. Accordingly, we affirm the court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and respondent were married in October 1991. Appellant was in prison when the couple married, and remains there.[1] Shortly before the couple married, appellant inherited a family home in Los Angeles. In 1996, the house was sold.[2]

Respondent filed for dissolution of the marriage in 2009. In 2010, judgment was entered. Appellant moved to set aside the judgment, and in May 2014, filed a motion to modify the judgment to give him credit for his separate property.

To support his entitlement to reimbursement, appellant submitted an agreement, signed by respondent, in which she stated she would deposit all of the money from the sale of the house, after deducting closing costs and purchasing an automobile, into a bank account or trust fund for his benefit. Appellant presented evidence that only approximately $3,600 had been deposited into his prison

---

[1] Appellant is serving a term of life imprisonment with the possibility of parole.

[2] Appellant stated the house sold for $147,000. Respondent asserted in a declaration that the proceeds of the sale were $92,800. We reconcile these figures by presuming the $92,800 represented the amount remaining after deduction of commissions and other sales costs, and repaying a loan taken out against the property to effect repairs.

account over the years. Appellant also presented evidence that respondent lived in the house prior to its sale in 1996, although she had represented to the court that she had not. Appellant estimated that after deduction of loans taken out to repair the house, the cost of an automobile, and the amount put in his prison account, he was entitled to a credit or reimbursement of $70,508.

In her opposition, respondent presented evidence that when appellant inherited the house, it was in disrepair. In addition, the property taxes were delinquent. There were tenants, but they moved out at the end of 1991, leaving the house filthy and unlivable. The property was listed for sale "[a]s [i]s," but received no offers. Thereafter, respondent expended substantial amounts to bring the property taxes up to date, to repair the premises, and for utilities and regular maintenance.[3] According to respondent, the funds to pay for upkeep and repairs came from (1) monies borrowed from respondent's grandmother; (2) a loan obtained on the property; (3) separate funds respondent brought to the marriage; and (4) respondent's employment.

After the house was sold and the sales costs and home loan repaid, respondent paid $20,500 to her grandmother for loans the grandmother had provided. In addition, respondent purchased a car for $27,816. After discussions with appellant, she used approximately $8,000 of the sales proceeds to lease an apartment in Culver City in order to demonstrate that appellant, who was being considered for parole that year, had a stable residence waiting for him. After appellant's parole was denied, respondent continued to live in the apartment, paying rent of $1,100 per month. From 1997 to 1999, respondent was

---

[3] Respondent presented evidence of having spent over $29,000 for home improvements between 1992 and 1996 (when the house sold), including stucco, paint, carpet, plumbing and a new roof. She also presented evidence of having spent over $35,600 during that same period for property taxes, insurance, utilities, gardening and monthly payments on the loan taken out for repairs.

3

unemployed, as she had quit her job so she could visit appellant on weekends and focus on a business she had started.[4] When visiting appellant, she stayed overnight at a motel near the prison.[5] In addition, during the marriage, she paid over $1,500 for collect calls from appellant and spent approximately $16,000 to send him packages in prison. Appellant was denied parole again in 2000. By that time, according to respondent, the funds from the sale of the house were depleted.

At the June 2015 hearing on appellant's motion, respondent stated that she not only spent all the money from the sale of the house, but also put herself into debt, maintaining the house until it could be sold and paying for her living expenses and the additional expenses related to appellant's imprisonment. She stated that she warned appellant they were going to be broke, and that he told her to go ahead and spend the money. Appellant, who appeared telephonically, expressed his understanding and agreement that the money respondent had borrowed for repairs was to be repaid from proceeds of the sale of the house. He denied agreeing to let respondent use the funds for personal or living expenses. When the court attempted to halt appellant's narrative, appellant refused to stop talking.[6] After several warnings that his actions would lead to revocation of his telephonic privileges, the court disconnected the call.

---

[4] Respondent stated she had started the business in order to show the parole board that appellant had a job waiting for him if released. The business never made money and was eventually closed. In 1999, respondent got a job with a department store.

[5] During this period, appellant was housed in Tehachapi. Respondent estimated she spent $2,270 for motel expenses (43 nights at $52.97 per night), $1,290 for gasoline, and $1,720 for food and drink.

[6] Referring to prior proceedings, the court stated at the beginning of the hearing: "Let me just say preliminarily, last time we had a bit of a problem with our hearing. So if I say to you, sir, that you need to stop talking, you need to stop talking immediately. [¶] If that doesn't occur, we will disconnect the phone call, and you will no longer participate in the hearing; is that perfectly clear?" Appellant responded "Yes."

In ruling on the motion, the court stated that it found respondent's testimony credible. It found that the parties had agreed that respondent could spend appellant's separate funds for expenses to maintain and repair the house and for certain community expenses. Accordingly, it denied appellant's request to modify the judgment to give him credit for his separate property. This appeal followed.

## DISCUSSION

### A. *Conduct of Hearing*

Appellant contends the trial court denied him due process when it cut off his telephonic appearance at the hearing after he interrupted the court and refused to stop talking.[7] We find no due process violation.

California Rules of Court, rule 3.670, permitting parties to appear at civil hearings telephonically, is not applicable to family law cases. (See Cal. Rules of Court, rule 3.670(b); Advisory Committee Comments to Cal. Rules of Court, rule 3.670.) Nonetheless, an indigent prisoner has a federal and state constitutional right to meaningful access to the courts to participate in a civil proceeding, which may require the court to permit telephonic appearances at hearings in order to ensure such access. (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 203-207; *Jameson v. Desta* (2009) 179 Cal.App.4th 672, 678; *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1482; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792.) "A trial court is to exercise its 'sound discretion' in determining the appropriate

---

[7]    No respondent's brief was filed. Appellant filed a motion contending respondent was in default and that he was entitled to the relief requested in his brief. The rule we follow when no respondent's brief is filed "is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found. [Citations.]" (*Votaw Precision Tool Co. v. Air Canada* (1976) 60 Cal.App.3d 52, 55; accord, *Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 80, fn. 2.) Accordingly, we deny appellant's motion.

method by which to ensure meaningful access to the court. [Citation.] 'The exercise of the trial court's discretion will not be overturned on appeal 'unless it appears that there has been a miscarriage of justice.' [Citation.]'" (*Jameson v. Desta*, *supra*, 179 Cal.App.4th at p. 678, quoting *Wantuch v. Davis*, *supra*, 32 Cal.App.4th at p. 794.)

Here, the court permitted appellant to appear telephonically as long as he adhered to acceptable rules of conduct. Appellant did not abide by the agreed rules and lost the telephonic privileges granted him by the court for a portion of the hearing. Appellant had time to argue and state his position prior to being disconnected, and the court took action only after appellant repeatedly ignored its orders. We cannot say the court abused its discretion by choosing to withdraw appellant's telephonic privileges at that point.

Moreover, we find no prejudice. The court was familiar with the parties and the issues. Their positions were clear from the evidence and declarations filed with appellant's moving papers and respondent's opposition. Neither party presented any new matters of significance at the hearing. Appellant was permitted to speak for some time after respondent presented her position and prior to being disconnected for failing to abide by the court's directives. Once the court had heard from both sides, it decided the motion on the merits. Notably, appellant's brief fails to identify any additional evidence or argument he would have proffered had he been permitted to continue. Under these circumstances, we would find any error on the part of the court harmless.

### B. *Appellant's Right to Credit or Reimbursement*

Appellant represents himself in this appeal. A litigant appearing in propria persona is "held to the same restrictive rules of procedure as an attorney" and is "entitled to the same, but no greater, consideration than other litigants and

attorneys [citations]." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639; accord, *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1444.) On appeal, a trial court's order is presumed correct, and it is up to the appellant to demonstrate error based on the record. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) The appellant must "present[] legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record . . . ." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) "It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf. [Citation.]" (*Id*. at p. 656.)

In his brief on appeal, appellant's sole substantive contentions are that respondent lied about certain matters and that the court "violate[d] fundamental fairness" by allowing her to obtain an "unfair financial gain" based on "'false evidence'" and "'perjured testimony.'" Specifically, he claims that at an earlier point in the litigation, respondent falsely claimed that she never lived in the house, and that the money from its sale "was put on [appellant's] books at different intervals . . . ." Appellant misperceives the role of the appellate court. We do not make independent credibility determinations, but are bound by the credibility determinations of the trial court. (See, e.g., *People v. Lee* (2011) 51 Cal.4th 620, 632 ["'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts.'"]; *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 931 ["This court views the entire record in the light most favorable to the prevailing party . . . . We must resolve all conflicts in the evidence and draw all reasonable inferences in favor of the findings"].)

7

Moreover, it is clear that the matters about which appellant claims respondent lied had no impact on the trial court's determination. Prior to the hearing, respondent presented detailed evidence establishing where the funds from the sale of the house went. The evidence established that although only approximately $3,600 of the sales proceeds were deposited directly into appellant's prison account, the bulk of the funds -- nearly $65,000 -- went to reimburse lenders or the community for the costs of repairing and maintaining the property prior to the sale. Another $27,816 was spent on a car, an expense appellant approved as set forth in his moving papers. Other significant amounts -- approximately $17,500 in total -- were spent on expenses personal to appellant -- sending him packages of food and goods in prison and paying for his collect calls from prison. Finally, respondent established that she rented the apartment in Culver City with appellant's agreement at a cost of thousands of dollars in order to establish that he had stable housing at a time when he was being considered for parole. Any remaining funds were spent on respondent's continued rent on the apartment in Culver City and the expenses of traveling to visit appellant on weekends. The court thus had all the information necessary to determine whether appellant was entitled to a credit or reimbursement for use of his personal property for community expenses or respondent's personal living expenses.

Appellant's contention that respondent lived in the house prior to its sale was not germane to any issue before the court. A spouse's entitlement to reimbursement for the use of separate property funds for community expenses or respondent's personal living expenses is governed by Family Code section 914 or Family Code section 2640. Under section 914, subdivision (a) of the Family Code, a married person is responsible for debts incurred for the common necessaries of life of the person's spouse, whether they are living together or separately, subject to a claim for reimbursement under the following circumstances: "If separate

8

property is so applied at a time when nonexempt property in the community estate or separate property of the person's spouse is available but is not applied to the satisfaction of the debt, the married person is entitled to reimbursement to the extent such property was available." (Fam. Code, § 914, subd. (b).) Under section 2640, subdivision (b) of the Family Code, unless there is a written agreement specifying otherwise, at the time of the division of the community estate, each party "shall be reimbursed for [that] party's contributions to the acquisition of property of the community property estate to the extent the party traces the contribution to a separate property source."

Family Code section 914, subdivision (b) does not apply. Appellant does not contend, and our review of the record does not establish, that at the time respondent was apparently using funds derived from the sale of appellant's separate property to pay her living expenses, there was "nonexempt property in the community estate or separate property of [respondent] [] available but [] not applied . . . ." Respondent stated in her declaration that she used up her separate funds from before the marriage and the salary from her employment to repair and maintain the house prior to the sale, and that from 1997 to 1999, she was unemployed.[8] Nor does appellant contend that he presented evidence sufficient to enable the court to trace funds from the sale of his separate property to any community property held at the time of the dissolution for purposes of establishing a right to reimbursement under Family Code section 2640, subdivision (b). (See *In re Marriage of Cooper* (2016) 247 Cal.App.4th 983, 997 ["The question of whether a spouse 'has adequately traced an asset to a separate property source is a question of fact for the trial court, and its finding must be upheld if supported by

---

[8] The documentary evidence provided by respondent established that repairs and maintenance costs totaled nearly $65,000, but the loans taken out to effect repairs totaled only approximately $42,000.

9

substantial evidence'"]; *In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 625 ["[Family Code] section . . . requires the paying spouse to *trace* contribution to a separate property source. If the paying spouse simply sits back and does nothing, there will be no reimbursement"].) Accordingly, appellant failed in his burden to demonstrate error in the trial court's determination that he was entitled to no credit or reimbursement.

## DISPOSITION

The order is affirmed. As respondent made no appearance, no costs are awarded.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.

10