Filed 11/10/22  State Center Community College Dist. v. Brambila CA5
Opinion following oral argument

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| STATE CENTER COMMUNITY COLLEGE DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RODOLFO ALEJANDRO BRAMBILA, <br><br> Defendant and Appellant. | F082744 <br><br> (Super. Ct. No. 20CECG03583) <br><br><br> **OPINION** |

**THE COURT**\*

APPEAL from an order of the Superior Court of Fresno County.  Mark E. Cullers, Judge.

Rodolfo Alejandro Brambila, in pro. per., for Defendant and Appellant.

Lozano Smith and Wiley R. Driskill, for Plaintiff and Respondent.

-ooOoo-

Rodolfo Alejandro Brambila, a self-represented inmate at the Fresno County jail (jail), appeals the trial court's grant of State Center Community College District's (State Center) petition for a workplace violence restraining order against him under Code of

---

\*      Before Smith, Acting P. J., Snauffer, J. and DeSantos, J.

Civil Procedure section 527.8.[1]  Brambila contends his constitutional rights were violated when the superior court rejected his response to the petition because it was written in pencil and in denying his request to be transported from the jail to the hearing.  Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2020, State Center filed a petition for a workplace violence restraining order to protect Fresno City College (FCC) instructor Hanna York, her husband, her two children, and three other FCC employees from Brambila.  The declarations of York, FCC Dean Cynthia A. Luna, FCC instructors Elisha K. Wells and Melissa Wolfmann, and FCC President Carole Goldsmith were submitted in support of the petition.

York declared that on November 23, 2020, Brambila, who was one of her students in an online course, sent her text messages about needing help and he was "about to do something unthinkable"; York advised him to get help and call police if he was going to do something dangerous.  On December 1, 2020, Brambila went to York's residence uninvited and began knocking on the door, asking her to open it and talk to him, but she refused and repeatedly asked him to leave.  When he finally left, she ran to a neighbor's house to use a phone as hers was broken, and she filed a police report.  Finally, on December 10, 2020, Brambila went to York's residence, again uninvited, armed with a firearm.  He hid in her backyard where her two young daughters were playing and when York went into the backyard, he assaulted her and threatened her with the firearm.  York fought back and was rescued by her husband, her neighbors, and the Fresno Police Department.  Brambila was arrested and was being held in custody at the jail on seven felony charges, including assault with a firearm, kidnapping, stalking, and false imprisonment with violence.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

2.

Goldsmith declared that after news of this last incident broke out, some of Brambila's instructors at FCC expressed fear for their safety if Brambila were released from custody. Goldsmith was concerned for the safety of the employees and students at FCC and the other State Center campuses due to Brambila's actions against York.

Luna, who oversaw Brambila's courses and had email communication with him, was concerned for her safety and believed Brambila may retaliate against her "for what he perceives as being 'against him.' " Wells, who had Brambila in her classes in the Spring and Fall of 2020, declared that Brambila was disruptive in class, on one occasion he made a "frightening outburst" in which he publicly berated Wells for how she was teaching the class, and he treated her with disdain, as though he were angry with her. Based on her interactions with Brambila and his actions toward York, she feared for her and her students' safety. Wolfmann, who had Brambila in her class in the Fall 2020 semester, also feared for her safety based on Brambila's actions toward York.

The trial court issued a temporary restraining order on December 15, 2020. The petition, declarations, temporary restraining order, blank response, instructions on how to respond, and notice of court hearing were personally served on Brambila at the jail on December 30, 2020. The hearing on whether to issue a permanent restraining order was set for March 1, 2021.

On January 7, 2021, the superior court marked as received a handwritten letter Brambila sent to the superior court, which was written in pencil and dated December 31, 2020.[2] Brambila stated he was in custody at the jail, and he did not have access to any legal resources, including the law library, legal paper, pen, or computer. He wrote that he wanted to make a statement regarding the petition and asserted that neither State Center nor FCC had jurisdiction because the issue was not workplace related. Brambila explained that while he was an FCC student, he and York had a "history that extends

---

[2]    While the stamp on the letter states only that it was "received," the register of actions describes the document as "response filed."

3.

beyond FCC and this involves a personal matter between her and me," and none of the incidents described in York's declaration occurred at or were related to State Center or FCC. Brambila noted York filed for "virtually the same protection," namely, a temporary restraining order, in Fresno County Superior Court case No. 20CECG03562, and he asked the court to dismiss the petition, vacate the court's order, and allow York's personal petition and temporary restraining order "to play out, where this belongs." Brambila signed the letter under penalty of perjury.

On February 17, 2021, the superior court clerk returned a "WV-120 Response" to Brambila without filing it, with a form on which the following box was marked: "Response cannot be written in pencil. You must use either blue or black ink, or typed."[3]

A hearing on the petition was held on March 1, 2021. State Center's attorney attended the hearing, but Brambila was not present. The minute order of the hearing states: (1) the trial court "grants permanent injunctive relief" and adopts the restraining order's conditions as the court's order; (2) the permanent injunction would remain in full force and effect for three years from March 1, 2021; and (3) the order was signed in open court. The trial court signed form WV-130, entitled "Workplace Violence Restraining Order After Hearing," which protects York, her family, and the other FCC employees from Brambila, and requires him, among other things, to stay 100 yards away from FCC and all other State Center campuses.

The record contains a handwritten letter Brambila sent to the superior court, which is dated February 25, 2021, but is marked as received at the superior court on March 1, 2021. Brambila explained he sent a letter to the court on February 1, 2021, which stated

---

[3]     In his opening brief, Brambila asserts he submitted the response to the petition on February 5, 2021, which included attachments, four exhibits, and a proof of service. The WV-120 response, however, is not in the record. He also asserts he completed the response in pencil because that is the only writing instrument jail inmates are allowed to possess, and the criminal department routinely accepts filings in pencil. Statements in briefs are not evidence. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.)

he was in custody at the jail, he wanted to attend the March 1, 2021 hearing in department 404, and jail staff told him to write the court so the court could coordinate his appearance.[4] Brambila stated he "just checked with the jail" and they had not received any communication from the court regarding the hearing, which was to occur the following Monday. Brambila wrote he was again informing the court he "would like to attend this hearing" and per the jail staff the court must contact them to ensure his presence, and he "would like to ask the court to continue this hearing to early April, 2021" pursuant to section 527.8, subdivision (o), which allows the respondent one continuance as a matter of course.

The trial court issued a written order on March 1, 2021, which stated, "[t]he Court is in receipt of [Brambila]'s letter requesting that he be transported to the court to attend his hearing on March 1, 2021. This request is denied." The order explained, "[t]he Court may not issue a production or transportation order for Defendant to attend any hearings in this action," citing *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 642 and *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 794, and while there were "certain limited exceptions to this rule," none applied in this instance.

On March 3, 2021, the superior court clerk sent Brambila a form notice with a box checked which stated: "The court has denied your request to appear at the hearing set for 3/1/2021. This case has been heard and a copy of the minute order will be mailed to you shortly."

## DISCUSSION

Section 527.8 permits an employer to seek a restraining order on behalf of an employee who has "suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out

---

[4] There is no indication in the record that the superior court received the February 1, 2021 letter; the letter is not in the clerk's transcript and the register of actions does not include an entry that such a letter was received.

at the workplace." (§ 527.8, subd. (a).) A "credible threat of violence" includes a "course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.8, subd. (b)(2).) If, after a hearing, a judge "finds by clear and convincing evidence that the respondent engaged in unlawful violence or made a credible threat of violence, an order shall issue prohibiting further unlawful violence or threats of violence." (§ 527.8, subd. (j).)

While we generally review an injunction issued under section 527.8 to determine whether substantial evidence supports the necessary factual findings (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538), Brambila does not challenge the trial court's factual findings or argue the facts stated in the declarations do not support issuance of the restraining order. Instead, he contends his constitutional rights were violated when the trial court denied his request to be transported to the hearing and the superior court clerk rejected his WV-120 response because it was completed in pencil.

On appeal, we must presume the trial court's rulings are correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, we must adopt all inferences in favor of those rulings, unless the record expressly contradicts those inferences. (*California Pines Property Owners Assn. v. Pedotti* (2012) 206 Cal.App.4th 384, 392 [we presume the trial court's judgment is correct and indulge "all intendments and presumptions" in support of the judgment on matters the record is silent on]; see *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 889 ["on appeal we presume the trial court's order is correct, indulge all presumptions in favor of that correctness, and resolve all ambiguities in favor of affirmance"].)

Based on the appellate record, we presume (in favor of the restraining order's correctness) that the trial court was not aware of Brambila's requests to be transported to the hearing and for a continuance when the hearing occurred. The register of actions and the restraining order both show the hearing took place at 8:30 a.m. on March 1, 2021.

The minute order of the hearing does not mention Brambila's requests to be transported to the hearing or for a continuance, and it shows the restraining order was signed in open court.  Thus, we presume the order was entered the morning of March 1, 2021, and the trial court did not rule on Brambila's requests at the hearing.

The superior court marked Brambila's written requests to be transported to the hearing and for a continuance as being received on March 1, 2021.  The register of actions shows the trial court issued the written order denying the transportation request during "Chambers Work," which took place at 5:30 p.m. that day.  Although the written order denying the request does not state the request was received after the hearing, the trial court could have chosen to address the merits of the request without mentioning the hearing had already been held.

Based on this record, we cannot conclude the trial court was aware of Brambila's requests when it issued the restraining order on the morning of March 1, 2021.[5]  While Brambila claims he notified the trial court of his transportation request on February 1, 2021, there is nothing in the record to indicate the trial court ever received that request.  Since the trial court was unaware Brambila wanted to attend the hearing and wanted a continuance, it did not err in holding the hearing in his absence or in issuing the restraining order, and we do not have a basis to reverse its decision, even if the trial court's order denying his requests to attend the hearing and for a continuance were erroneous.

Once the court entered the restraining order, Brambila's recourse was to bring his objections to the trial court's attention, such as by moving to set aside the order or

---

[5]    While Brambila recognizes in his reply brief that the record suggests his March 1, 2021 letter was received after the hearing had taken place, he asserts that cannot be known "for sure since none of the items have time stamps."  But we must presume the trial court was unaware of Brambila's letter, as we resolve any uncertainty in the record against him.  (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549 [an appellant "bears the burden to provide a record on appeal which affirmatively shows that there was an error below, and any uncertainty in the record must be resolved against" the appellant].)

seeking reconsideration. (See, e.g., § 473, subd. (b) [trial court may relieve a party from an order taken against him or her "through his or her mistake, inadvertence, surprise, or excusable neglect"]; § 1008, subd. (a) [a party may seek reconsideration of an order "based upon new or different facts, circumstances, or law"].) We do not consider issues not raised in the trial court where an objection could have been, but was not, presented to the lower court by some appropriate method. (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1558.)

We recognize Brambila complains he was deprived of due process when the superior court returned his response to the petition without filing it because it was written in pencil. Brambila, however, has not shown the clerk erred in returning the response to him for that reason. Moreover, Brambila apparently did not attempt to resubmit the papers with the explanation that he only had a pencil available to him or bring a motion to set aside or reconsider the restraining order on this ground.[6]

In sum, Brambila has failed to show the trial court erred in granting the restraining order.

## DISPOSITION

The trial court's March 1, 2021 workplace violence restraining order is affirmed. The parties shall bear their own costs on appeal.

---

[6] Brambila has filed a request for us to take judicial notice of letters dated February 25, 2021, March 23, 2021, and April 27, 2021, which he purportedly submitted in the case concerning York's petition for a restraining order, Fresno County Superior Court case No. 20CECG03562. These letters are all marked received by the superior court on or after March 1, 2021. We deferred ruling on the request, which we now deny, as the letters were not before the trial court in the present case and therefore are irrelevant to this appeal. (*In re Zeth S.*, *supra*, 31 Cal.4th at p. 405 [" 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration' "].)

8.