Filed 7/11/16  Wilkins v. Wilkins CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JANENE WILKINS,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>KEENAN WILKINS,<br><br>　　　Defendant and Appellant. | F069230<br><br>(Super. Ct. No. 686620)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Jack M. Jacobson, Judge.

Keenan Wilkins, in pro. per. for Defendant and Appellant.

Janene Wilkins, in pro. per. for Plaintiff and Respondent.

-ooOoo-

Husband appeals from the judgment in this dissolution proceeding.  He asserts the trial court denied him access to the courts, improperly granted him visitation with the parties' children only in wife's discretion, and improperly denied or failed to rule on his requests for disqualification of the trial judge.  We find no error and affirm the judgment.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Wife, in propria persona, filed a petition for dissolution in August 2012, seeking to dissolve the parties' marriage and to obtain sole legal and physical custody of the parties'

two minor sons. She requested that the parties' property rights be determined, did not request spousal support, and requested that the trial court terminate its jurisdiction to award spousal support to husband. After the petition was served on husband, he filed a request that the court appoint counsel for him, declaring he was incarcerated in prison, in administrative segregation, and had no access to a law library, to assistance from persons trained in the law, or to a telephone.[1] The trial court denied the request, stating husband could participate in the case by communicating in writing or by telephone if he could make arrangements with the prison to do so.

Husband subsequently sent the trial court documents requesting status updates on the case and objecting "to denial of due process and access to courts." His objection document indicated he had communicated with Julie Dodge at the family law facilitator's office, and she had informed him of proceedings held in his absence and documents not served on him.

Husband filed a request for an order setting aside his default. He had been transferred to Martinez Detention Facility and asserted he was indigent, was being denied access to the courts, and had no ability to make copies of documents. Included with the motion was a letter he wrote to Dodge, in which he acknowledged receiving forms she had sent him, discussed trouble he was having filing forms with the trial court and obtaining them from the jail, and enclosed the completed request to set aside default, with an implied request that she serve and file it.[2] The trial court granted husband's motion to set aside default, allowing him to respond to the petition and noting he would be permitted to participate in the trial by submitting a written declaration and any exhibits relevant to the contested issues.

---

[1]     This document, like most of the documents husband submitted to the trial court, was handwritten on lined paper.

[2]     Husband subsequently acknowledged that the request to set aside default he sent to Dodge was filed and wife acknowledged a copy of the request was served on her.

In July 2013, husband submitted a statement of disqualification of the trial judge for cause. The trial court struck it because it had not been personally served on him.

In August 2013, husband submitted to the trial court "Respondent's Informal Request for Discovery," which was addressed to wife, and made "an informal request" for her to disclose within 15 days various documents and pieces of information about specified items of property husband asserted he had purchased and had left in wife's possession when he was incarcerated.

After being granted an extension, husband filed his response to the petition for dissolution in September 2013. He sought joint legal custody of the minor sons, with physical custody to wife. He did not request spousal support. Husband did not list any separate or community property; instead, he stated he was incarcerated, wife had the property and records, he was seeking discovery from wife, and he would amend once property and debts became known. As part of his response to the petition, he submitted a "Respondent's Declaration in Support of Request for Order to Comply with Discovery," which sought an order requiring wife to disclose the information requested in husband's informal request for discovery. In October, he filed "Respondent's Objections and Renewed Request for Order to Compel Discovery."

In October 2013, husband filed a declaration in support of peremptory challenge, again seeking to disqualify the assigned trial court judge. Additionally, in the course of the proceeding, husband submitted a request for continuance of trial, a motion to strike the petition for dissolution on the ground it allegedly contained false statements, a request for contempt sanctions against wife, and multiple requests for a status update on his various requests.

The matter was tried on December 9, 2013. The minute order noted husband's ex parte request to continue trial had not provided good cause to delay the trial, his requests for disqualification of the judge had not been personally served as required, and no request for an order compelling discovery had ever been filed, nor had a formal discovery

3.

request been served on wife that would allow the court to compel discovery. The minute order reflected that wife testified at trial; there is no record of husband submitting any written declaration or other evidence for the trial. The trial court granted dissolution, granted wife sole legal and physical custody of the children, with all contact with husband to be in wife's discretion, denied spousal support to either party, and found there were no assets or obligations to be divided. Husband appeals.[3]

## DISCUSSION

### I.     Access to the Courts and Appointment of Counsel

Husband contends the trial court abused its discretion by denying his request for appointment of counsel. He also seems to contend the trial court denied his right of access to the courts by not appointing counsel or providing some means of access other than appearing through written declarations or by telephone if allowed by jail officials.

Prisoners possess a constitutional right of access to the courts in civil matters. (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 914 (*Payne*).) This right of access comes into existence only when a prisoner is indigent and is confronted with a bona fide legal action threatening his interests. (*Id*. at p. 924.) The establishment of the prisoner's right of access does not mandate a particular remedy. (*Id*. at p. 923.) It entitles the prisoner to a meaningful opportunity to be heard; how that is achieved is to be determined by the exercise of discretion by the trial court. (*Id*. at p. 927.) "The exercise of the trial court's discretion will not be overturned on appeal 'unless it appears that there has been a miscarriage of justice.'" (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 794 (*Wantuch*).)

---

[3]     In the absence of opposition, we grant husband's two outstanding requests for judicial notice:  a request filed November 12, 2015, seeking judicial notice of husband's trial court motion to vacate the judgment, and a request filed May 5, 2016, seeking judicial notice of a letter from wife to the prison, requesting an explanation for the denial of husband's request for contact visits with the parties' sons and stating that sons "need a relationship with their father."

Potential options for affording access to the courts include: appointing counsel to appear for the prisoner, transporting the prisoner for personal appearances in court, deferring trial until the prisoner's release if other parties will not be prejudiced, holding a portion of the trial at the prison, taking the prisoner's deposition in lieu of a personal appearance, conducting proceedings by telephone, closed circuit television, or other electronic media, using declarations submitted by the parties, and implementing other innovative, imaginative procedures. (*Payne*, *supra*, 17 Cal.3d at pp. 923–925; *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 644; *Wantuch, supra*, 32 Cal.App.4th at pp. 792–793.)

Appointment of counsel will generally be used only as a last resort. While the court has power to order appointment of counsel, in the absence of authorizing legislation, it lacks the power to order that appointed counsel be compensated for representing the prisoner. "In an appropriate case, and as a last alternative, appointment of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts for the protection of threatened personal and property rights. We again stress that access—not the right to counsel—is the keystone of the structure we built in *Payne*, and we point out once more that the power to appoint is independent of the power to compensate." (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 200–201.) Compelling an attorney to represent a civil litigant without compensation has been found to be a violation of the attorney's right to equal protection of the law. (*Cunningham v. Superior Court* (1986) 177 Cal.App.3d 336, 338, 347–352.)

"In determining the appropriate remedy to secure access, the trial court should consider the nature of the action, the potential effect on the prisoner's property, the necessity for the prisoner's presence, the prisoner's role in the action, the prisoner's literacy, intelligence and competence to represent himself or herself, the stage of the proceedings, the access of the prisoner to a law library and legal materials, the length of the sentence, the feasibility of transferring the prisoner to court and the cost and

5.

inconvenience to the prison and judicial systems." (*Wantuch*, *supra*, 32 Cal.App.4th at p. 793.) We note that "[t]he right of access to the courts does not require that the state enable the prisoner to litigate effectively once in court." (*Lewis v. Casey* (1996) 518 U.S. 343, 354.)

The action is one for dissolution of marriage, a bona fide legal action affection husband's interests. Neither party sought spousal support; wife did not seek child support from husband. Husband asserts he lost custody and property rights as a result of the denial of his access to the courts. Neither party identified any community property that needed to be divided between the spouses, or any separate property, ownership of which needed to be confirmed to one of the spouses. Husband's response to the petition for dissolution indicated the property was unknown and would be identified later. Husband did not submit any declaration or other evidence at trial; he offered no evidence there was property of the marriage to be divided.[4] In its findings after trial, the trial court determined there were no assets or obligations to be divided.

In his response to the petition for dissolution, husband sought joint legal custody of the children. He presented no declaration at trial addressing the issue of legal custody. The trial court awarded legal and physical custody of the children to wife.

Based on the papers he has submitted in this court and in the trial court,[5] it appears husband is intelligent, and is able to write coherently, cite to legal authority, and present his claims and issues to the court. He raised the issue of access to the courts at the outset of the proceeding, and the trial court addressed it in its February 2013 case management conference order, permitting husband to appear in writing or by telephone if allowed by

---

[4]    Husband's informal request for discovery listed various items of property and requested that wife provide information about them. Husband did not identify those items as property to be divided, either in his response to the petition for dissolution or in a declaration submitted for trial.

[5]    We note that, in addition to litigating the dissolution action in the trial court and on appeal, husband filed multiple writ petitions with this court during the course of the litigation.

6.

the jail. The record contains no information regarding the length of husband's sentence, or the feasibility, cost, or inconvenience of transporting him to court for hearings or trial.

Husband contends he did not have access to a law library or to legal materials and forms needed to present his case in court. He has provided no explanation—either his own or one offered by the facility—for the denial of access to the library. Jail regulations require each facility to have written policies and procedures for library service. (Cal. Code Regs., tit. 15, § 1064.) Husband submitted no evidence that he followed those procedures to formally request the use of the law library, that his requests were denied, or that he used any administrative grievance procedures to appeal any such denial. (See Cal. Code Regs., tit. 15, § 1073 [requiring facility to have written policies and procedures to appeal and have resolved grievances relating to conditions of confinement].)

Husband also asserts he was denied access to a telephone, so he could not make court appearances by telephone. He submitted one document in which the jail denied his request to appear by telephone at the hearing of husband's motion to set aside default. The facility administrator responded: "Sorry, I cannot assist you in your civil matters. Please utilize your outside resources." Local detention facilities are required to have written policies and procedures allowing reasonable access to a telephone. (Cal Code Regs., tit. 15, § 1067.) Husband submitted nothing indicating he used the facility's grievance procedure to appeal that denial or to resolve his requests to use the telephone to appear in court.

Husband also contends he was unable to obtain the necessary family law forms from the jail or to copy documents for service. He submitted to the trial court one document in which the jail's legal services contractor, Legal Research Associates, responded to his request for forms: "The item(s) you have requested exceeds the scope of LRA's agreement with your incarcerating facility and will not be provided."

Early in his involvement in the dissolution proceeding, husband began communicating with Dodge at the family law facilitator's office. She provided him with

the forms he needed to move to set aside the default; she also provided a copy of husband's document for him to serve on wife. In spite of her help with setting aside the default, husband apparently did not enlist her assistance with other tasks, such as obtaining other family law forms, obtaining the discovery he believed he needed from wife, or preparing a declaration to present his case at trial. Although the trial court gave the parties notice of the trial date more than two months in advance, and expressly advised husband he was permitted to present his case at trial by written declaration and exhibits, husband did not take advantage of that opportunity. There is nothing in the record indicating that he sought Dodge's assistance in preparing for trial, or that he asked the jail authorities to permit him to appear at trial by telephone.

"A prisoner may not … compel a trial court to appoint counsel." (*Wantuch*, *supra,* 32 Cal.App.4th at p. 793.) In particular, husband may not compel appointment of counsel by failing to fully use the means and resources available to him to effectuate his right of access to the trial court. Husband acknowledges in his opening brief that he has no constitutional right to appointment of counsel, but he has not suggested any alternative means the trial court could have or should have used to ensure his rights were protected.

We conclude the trial court did not abuse its discretion in denying appointment of counsel to represent husband in the dissolution proceeding. We further conclude the trial court did not abuse its discretion by relying on assistance from the family law facilitator's office and written communications and declarations to the trial court, as well as telephone appearances if permitted by the jail, to provide husband access to the court proceedings in this case. The issues presented by the pleadings were quite limited. No dispute was raised as to the dissolution itself, physical custody of the children, or spousal or child support. The only issues husband claims required a decision of the trial court were legal custody of the children, visitation, and property division. Husband made no presentation to the court on those issues, although he was given the opportunity to do so. He has not explained his failure to do so. He has not demonstrated that the means of access provided

8.

by the trial court were insufficient or prevented him from fully presenting his case in the trial court. We find no miscarriage of justice and no reversible error.

## II. Visitation

Husband asserts granting wife legal and physical custody of the children, with visitation only in her discretion, constituted cruel and unusual punishment. Additionally, he appears to contend the statutory test for denying visitation was not met.

On appeal, the judgment is presumed correct and the burden is on the appellant to affirmatively demonstrate error. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) An appellant must raise claims of reversible error and present argument and authority on each point made. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] … waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. omitted (*Benach*).)

Husband failed to present any legal authorities or reasoned argument in support of his assertion of cruel and unusual punishment. He did not set out the test for determining whether and when actions of the state constitute cruel and unusual punishment, nor did he demonstrate that the actions taken in this case met the test. Consequently, we treat the argument as forfeited.

Husband seems to contend the denial of visitation, except in wife's discretion, does not comply with Family Code section 3100. That section provides that, in making a child custody order, "the court shall grant reasonable visitation rights to a parent unless it

is shown that the visitation would be detrimental to the best interest of the child." (Fam. Code, § 3100, subd. (a).)

An appellant is responsible for providing the appellate court with a record adequate to address the issues raised on appeal and to demonstrate prejudicial error. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) The trial court made its custody order after trial. Any showing made in support of the order would have been made at the trial. Husband, however, has not provided us with a reporter's transcript or other record of the trial proceedings. (See Cal. Rules of Court, rules 8.130, 8.134 & 8.137 [allowing use of a reporter's transcript, agreed statement, or settled statement as record of oral proceedings].) Without such a record, we cannot review the showing made in support of the custody order to determine its sufficiency. The judgment is presumed correct and husband has not affirmatively demonstrated error in the custody and visitation order.[6]

## III.    Challenges to the Trial Court Judge

A judge must be disqualified for cause if any of a number of grounds set out in Code of Civil Procedure section 170.1[7] apply. (§ 170.1, subd. (a).) If a judge should disqualify himself or herself, but fails to do so, "any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge.… Copies of the statement shall be served on each party … who has appeared and shall be personally served on the judge alleged to be disqualified, or on his or her clerk, provided that the judge is present in the courthouse or in chambers." (§ 170.3, subd. (c)(1).) The judge has

---

[6]    Based on the letter from wife to the prison where husband is now housed, which was the subject of husband's May 5, 2016, request for judicial notice, it appears wife is in favor of visitation between husband and their sons.

[7]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

10 days from filing or service of the statement, whichever is later, to consent to disqualification or file an answer. (§ 170.3, subd. (c)(3).) "[I]f a statement of disqualification is untimely filed or if on its face it discloses no legal grounds for disqualification, the trial judge against whom it was filed may order it stricken." (§ 170.4, subd. (b).)

On or about July 28, 2013, husband submitted to the court a statement of disqualification of the trial judge, Judge Jacobson, for cause pursuant to section 170.1. He asserted the judge was biased against him, based on various actions the judge had taken in the course of the proceedings, which he characterized as: not providing husband a right to be heard, having ex parte communications with wife, advocating for and providing legal advice to wife, failing to ensure husband's rights, and obstructing justice. The proof of service shows husband gave the document to jail officials for mailing to the clerk of the superior court and to wife. Judge Jacobson entered a minute order, striking the statement of disqualification pursuant to section 170.4, subdivision (b), on the ground husband had not complied with the requirement that he serve the judge by personal service.

Personal service of the statement of disqualification on the judge was a prerequisite to any obligation of the judge to respond to the statement and any obligation of the trial court to rule on the disqualification issue. The statement of disqualification was never personally served on Judge Jacobson. Thus, the disqualification issue was not properly placed before the trial court for decision.

A judge may be disqualified without a showing of cause by filing a motion supported by a declaration stating that the judge is prejudiced against the party, so that the party cannot, or believes he or she cannot, have a fair and impartial trial before the judge. (§ 170.6, subd. (a)(2).) "If directed to the trial of a civil cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 15 days after notice of the all purpose assignment,

11.

or if the party has not yet appeared in the action, then within 15 days after the appearance." (*Ibid.*) If the motion is "duly presented" and the declaration is "duly filed," without further proof, the matter must be assigned to another judge. (§ 170.6, subd. (a)(4).)

The case was assigned to Judge Jacobson for all purposes when the petition for dissolution was filed. Because he was assigned for all purposes, a peremptory challenge against him had to be made by motion directed either to Judge Jacobson or to the presiding judge, with a supporting declaration. On October 16, 2013, husband filed a "Declaration in Support of Peremptory Challenge." Although it referred to a peremptory challenge, it cited only section 170.1. The declaration was not accompanied by a motion, was not filed within 15 days after husband's first appearance in the proceeding, and was not directed to Judge Jacobson or the presiding judge. In the declaration, husband expressed his belief Judge Jacobson was prejudiced and biased against him so that husband could not have fair and impartial hearings before him.

As a peremptory challenge, the declaration failed to properly place the disqualification issue before the trial court. The issue was not raised by motion, directed to the assigned judge or the presiding judge. As a challenge for cause, it was not properly presented because it was not personally served on the challenged judge. In his findings and order after trial, Judge Jacobson observed that husband had "mailed to the court on several occasions, a statement of disqualification pursuant to Code of Civil Procedure § 170.3," and that the trial court had struck the initial statement on the ground personal service on the judge was never effectuated as required.

"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate …. The petition for the writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification." (§ 170.3, subd. (d).) This provision is the only method by which a party may seek appellate review of the ruling on

12.

the disqualification of a judge. (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 671 (*American Bicycle*).) It governs both disqualifications for cause and peremptory disqualifications. (*People v. Brown* (1993) 6 Cal.4th 322, 333.) The determination of the question of the disqualification of a judge, as that phrase is used in section 170.3, subdivision (b), includes determining whether the challenge was presented in the proper manner and at the proper time. (*People v. Hull* (1991) 1 Cal.4th 266, 274.) The section precludes a party from challenging the ruling on a disqualification motion on appeal from a final judgment. (*Ibid.*)

Nonetheless, a party may assert on appeal from the judgment a claim of denial of the state and federal constitutional due process right to an impartial judge. (*People v. Peoples* (2016) 62 Cal.4th 718, 787; *American Bicycle*, *supra*, 224 Cal.App.4th at p. 673.) That right is narrower than the statutory provision for disqualification, and justifies disqualification only under the most extreme facts. (*Peoples*, at p. 787.) To establish a due process violation, there must be a probability of actual bias on the part of the judge. (*Ibid.*) The statement of disqualification and subsequent declaration filed by husband failed to demonstrate any probability of actual bias on the part of Judge Jacobson. The initial statement of disqualification asserted the judge disregarded various documents husband submitted and actions of the court clerk in returning documents to him. There is nothing in the record to indicate Judge Jacobson was aware of the clerk's actions when they occurred. The judge's responses to husband's requests to the court do not demonstrate any actual bias. In his subsequent declaration seeking disqualification, husband complained that the judge had not made "a provision in some way" for him to appear at the September 27, 2013, case management conference. The facts shown by husband are not "the most extreme facts" and do not demonstrate a probability of actual bias on the part of Judge Jacobson.

We find no error in the trial judge's handling of the documents husband submitted regarding disqualification, and no denial of husband's due process right to an impartial judge.

## IV.    Denial of Continuance

Husband contends the trial court abused its discretion and denied him due process when it denied his request for a continuance of trial, which was based on his assertion that wife had failed to respond to discovery.  The burden is on the appellant to identify the error in the trial court's rulings, and to provide an argument and legal authority to demonstrate the error; otherwise the point is forfeited.  (*Benach*, *supra*, 149 Cal.App.4th at p. 852.)  Husband has offered no argument or authority on this point.  We treat it as forfeited.

## V.    Falsifying Information

Husband contends the trial court denied him due process by falsifying information it provided to this court in two proceedings he filed seeking writs of mandate.  In one case (*Wilkins v. Superior Court of Stanislaus County*, case No. F067476), he asserts the trial court filed an informal response to an inquiry from this court, in which the trial court indicated husband had no adverse interest at stake in the proceedings.  The informal response is not before this court.  We denied husband's request to augment the record to include the document, because there was no evidence it was filed with the trial court.  No error has been demonstrated.

In the second case (*Wilkins v. Superior Court of Stanislaus County,* case No. F068250), husband asserts the trial court provided an informal response to this court's inquiry, in which it falsely informed this court that husband had not filed any discovery motions.  The record does not support his contention that the trial court's information was false.  The provisions of the Civil Discovery Act (§§ 2016.010–2036.050; the Act) apply to discovery and discovery motions in family law proceedings. (§§ 2016.010, 2016.020; Fam. Code, § 210; *In re Marriage of Boblitt* (2014) 223

14.

Cal.App.4th 1004, 1022; Cal. Rules of Court, rule 5.12.) Under the Act, compliance with a discovery request may be obtained by filing a motion to compel a response. (§§ 2030.290, subd. (b), 2031.300, subd. (b).) The motion must include a notice of motion, the motion itself, a memorandum of points and authorities, and any other necessary papers, such as supporting declarations. (Cal. Rules of Court, rule 3.1112.)

Husband filed with the trial court an "informal" discovery request directed at wife. He subsequently filed a Respondent's "Declaration in Support of Request for Order to Comply with Discovery." He did not file a noticed motion to compel, supported by a memorandum of points and authorities, or evidence that he had served wife with a formal discovery request, to which she had failed to respond. Accordingly, husband's contention that the trial court denied him due process by falsifying information is without merit.

## *DISPOSITION*

The judgment is affirmed. Wife is entitled to her costs on appeal.

_____
HILL, P.J.

WE CONCUR:


_____
LEVY, J.


_____
GOMES, J.

15.