Filed 7/28/21  Jones v. Carraby CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOSEPH JONES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ARNETT CARRABY et al.,<br><br>    Defendants and Respondents. | D077390<br><br><br><br>(Super. Ct. No. ECU000559) |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

William Joseph Jones, in pro. per., for Plaintiff and Appellant.

Neil, Dymott, Frank, McCabe & Hudson, Clark R. Hudson, David P. Burke and Rachel A. Fisher for Defendants and Respondents.

## INTRODUCTION

Appellant William Joseph Jones appeals from the judgment entered against him after the trial court granted respondents' motion for summary judgment.  Jones claims on appeal that the trial court improperly excluded two expert opinions.  He also contends that the trial court improperly held a hearing on respondents' motion for summary judgment without him present.

For reasons we will explain, we reject Jones's claims and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Jones, a state prisoner proceeding pro se, filed suit against the respondents, ophthalmologists, for negligently performing a routine cataract surgery on Jones's right eye.  Jones alleged that their negligence resulted in 50% vision loss, a detached retina, and recurring pain.  He also alleged that respondents overprescribed a steroid, Prednisolone, that dangerously increased his eye pressure.

### B.    Procedural Background

#### 1.    *Respondents' Motion for Summary Judgment*

Respondents moved for summary judgment on the ground that there was no triable issue of material fact.  In support, they submitted the expert opinion of Dr. Robert Weinreb, an ophthalmologist.  Dr. Weinreb opined that the care provided by the respondents "did not negligently cause or contribute to [Jones's] alleged damages."  Specifically, Dr. Weinreb opined that the recommendation to undergo surgery, the actual surgical procedure, and the post-operative care were all within the standard of care.  He further opined that, even assuming Jones suffered a detached retina (which Dr. Weinreb claimed was not supported by the medical records), this is a recognized risk of cataract surgery and can occur even in the absence of negligence.  As for the claim of decreased vision, Dr. Weinreb noted that the decrease was slight (from 20/200 pre-surgery to 20/250 post-surgery), is a known risk of cataract surgery, and can occur even in the absence of negligence.

2. *Jones's Opposition*

In opposition, Jones argued that medical negligence could be established through photographic evidence, his medical records, and the high Prednisolone dosage, which, per Jones, was enough to "cause blindness per se." Jones submitted his own declaration opining about the negligence of the respondents, but he did not submit an opinion from a medical expert. He also sought to exclude Dr. Weinreb's expert opinion because it was based on hearsay evidence and because of a purported conflict of interest.

3. *Initial Hearings on Respondents' Motion for Summary Judgment*

The first hearing on respondents' motion for summary judgment was held on August 21, 2019. Jones appeared telephonically because he is incarcerated.

The trial court began the hearing by noting that respondents had not submitted written objections to Jones's evidence:

> "The Court: You responded to his objections, but as far as his evidence, Mr. Jones submitted a declaration. You have not objected to that?
>
> "[Defense Counsel]: "Correct, Your Honor."

In the absence of written objections to Jones's evidence, including his declaration opining on the standard of care and the cause of his damages, the trial court issued a tentative ruling denying respondents' motion for summary judgment. Respondents then immediately voiced oral objections:

> "[Defense counsel]: I would like to object to his evidence because he is not a qualified expert, and much of the evidence that he does cite to has not been authenticated, namely the records from U.C. San Diego. Pursuant to *People vs. Sanchez*, he has not taken the depositions of any of those treaters to then say that those records were authenticated."

3

With these oral objections on the record, the court sustained respondents' objections and overruled Jones's objections as to the admissibility of Dr. Weinreb's expert opinion. The court then addressed Jones's evidentiary obligations in opposing summary judgment:

> "Fundamentally, Mr. Jones, the problem here is when you go—let's say this case goes to trial. At that trial, your opinion will, I assure you, not be admissible and the opinion of doctors that they put in reports, and things like that, will not be admissible. [T]o establish medical negligence in a case like this, you must have an expert opinion, a qualified expert opinion, and that means from a physician. [¶] So you don't have that at this point. We don't have from you any declaration from a physician."

The trial court informed Jones that he was "going to have to have some expert opinion contradicting the opinion of the moving parties here or it's going to become an impossible task at that point." The court later reiterated this point: "So here is the long and short of it, Mr. Jones: You are kind of up against it here. You are going to have to get an expert opinion if you want to successfully oppose the defendants' motion." The court also clarified that, unlike those rare cases where an expert may be unnecessary because the negligence is "obviously clear" and "plain as day," a medical expert was necessary in this case to oppose summary judgment.

The court then granted Jones ninety days to locate "an expert in ophthalmology" to draw conclusions from the medical records and photographic evidence. The hearing was continued, and Jones was directed to file a supplemental declaration with an expert opinion before the next hearing on December 3, 2019.

Jones did not file an expert opinion by the next hearing and instead requested another extension of time. The court granted this request and continued the hearing once more to January 16, 2020.

4. *Jones's Supplemental Declaration*

Shortly before the third hearing, Jones submitted a supplemental declaration referencing an "expert declaration" by Dr. Sheila Wright-Scott and a progress note completed by Dr. Steven Yaplee, both ophthalmologists.

Dr. Wright-Scott's declaration is reproduced here in its entirety:

> "William [J]ones is a 53yr old male who sustained trauma to the right eye 2016, he underwent cataract surgery in right eye 2017 and developed glaucoma 2009 with laser to both eyes. He has decreased vision in the right eye due to macular edema. He has an anterior chamber lens implant in the right eye. The glaucoma in both eyes are advanced but under control."

Dr. Wright-Scott did not opine on the standard of care or any matter related to the cause of the damage in Jones's eye.

Dr. Yaplee's progress note presented the results of his examination of Jones two months after the cataract surgery. Dr. Yaplee noted that Jones had a "[h]istory of choroidal rupture and macular scar, right eye," "[a]dvanced glaucoma, right eye more than left," and "[a]nterior chamber lens, right eye." Dr. Yaplee directed Jones to continue with his prescribed medication and discussed future care. Dr. Yaplee also did not opine on any matter related to the standard of care or the cause of Jones's eye damage.

5. *Final Hearings on Respondents' Motion for Summary Judgment*

At the third hearing on respondents' motion for summary judgment, Jones briefly appeared telephonically but had to return to his cell due to a disturbance at the prison. As a result, the court continued the hearing a third time by approximately one week.

5

At the final hearing, Jones waited on the telephone line for 45 minutes, but he was never logged in by the court clerk. Apparently unaware that Jones was on the line, the court proceeded with the hearing anyway after finding that Jones had been given adequate notice. Upon proceeding, the court first reviewed the parties' evidence on respondents' motion for summary judgment and its prior rulings on their respective objections. The court then considered the exhibits to Jones's supplemental declaration. While the court did not address Dr. Yaplee's progress note, it held that Dr. Wright-Scott's letter did not create a dispute of material fact. The court stated, "I will note that in that letter, even were it made under penalty of perjury, it does not address the issue of the standard of care but merely his present condition, so it would make no difference in the ruling." In the absence of any other evidence to rebut Dr. Weinreb's expert opinion, the court granted respondents' motion for summary judgment.

## LEGAL STANDARDS

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (c).) A defendant who moves for summary judgment has the initial burden of showing each alleged cause of action is without merit. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A defendant can meet this burden by "prov[ing] an affirmative defense, disprov[ing] at least one essential element of the plaintiff's cause of action [citations], or show[ing] that an element of the cause of action cannot be established." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465; see *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 492.) "A defendant

6

is not entitled to summary judgment unless that moving party negates all theories of liability pleaded by the plaintiff." (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 397.)

If the moving defendant makes the required showing, the burden shifts to the plaintiff to produce evidence to make a prima facie showing of the existence of a triable issue of material fact as to the cause of action or affirmative defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at pp. 849-851.) If the plaintiff fails to meet that burden, the motion for summary judgment will be granted. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780 (*Saelzler*).)

"We review an order granting summary judgment de novo." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 858 (*Serri*).) "A trial court's stated reasons for granting summary judgment do not bind us; we review the court's ruling, not its rationale." (*Citizens for Odor Nuisance Abatement v. City of San Diego* (2017) 8 Cal.App.5th 350, 358.)

"In undertaking our independent review, we apply the same three-step analysis used by the trial court. First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has established facts justifying judgment in its favor. Finally, in most cases, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact." (*Serri, supra,* 226 Cal.App.4th at pp. 858-859.) "In performing our review, we view the evidence in a light favorable to the losing party . . . liberally construing [his or] her evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor." (*Id.* at p. 859; see *Saelzler, supra,* 25 Cal.4th at p. 768.) We "consider[ ] all of the evidence the parties offered in connection with

7

the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; see *Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 653 (*Mackey*).)

## DISCUSSION

### A. Appellate Principles

"It is a fundamental rule of appellate review that a judgment is presumed correct and the appealing party must affirmatively show error." (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) Even when no respondent's brief is filed, the appellant still bears the burden of showing prejudicial error. (See *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7; Cal. Rules of Court, rule 8.220(a)(2).)[1]

To overcome the presumption of correctness, "the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order." (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443; rule 8.204(a)(1)(B) [appellant's brief must "support each point by argument"].) "When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

The appellant must also provide an appellate record sufficient to establish error as to each challenged order. (*Jameson, supra*, 5 Cal.5th at p. 609.) " '[I]f the record is inadequate for meaningful review, . . . the decision of the trial court should be affirmed.' " (*Gee v. American Realty &*

---

[1]     All further rule references are to the California Rules of Court.

*Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) The appellant's brief must also "support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Rule 8.204(a)(1)(C).) An appellant who fails to provide proper citations to the record to support appellate claims may be deemed to have forfeited those claims. (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1251, fn. 11; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589 ["An appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference."].)

An appeal is not a second trial. We will affirm the judgment if it is correct on any theory, regardless of the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.) These appellate principles apply with equal force to self-represented appellants. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

## B. Trial Court Did Not Err in Excluding Jones's Evidence

Jones argues that the trial court improperly excluded the opinions of his experts, Dr. Sheila Wright-Scott and Dr. Steven Yaplee. We disagree.

An action for medical malpractice requires the plaintiff to show four elements: (1) the medical professional's duty " 'to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty' "; (3) an injury caused by the professional's negligence; and (4) resulting damages. (*Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 877.)

"In professional malpractice cases, expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care [citation], except in cases where the negligence is obvious to laymen." (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523.) Res

9

ipsa loquitur, meaning " ' "the thing speaks for itself," ' " is a doctrine supporting an inference of negligence when an injury "was probably the result of negligence by someone and [the] defendant was probably the person who was responsible." (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1540 (*Scott*).) Res ipsa, however, is limited to the most overt forms of negligence. For example, where a surgical object is sewn up inside a postoperative patient. (*Gannon v. Elliot* (1993) 19 Cal.App.4th 1.) Generally, whether a physician was negligent is "a matter peculiarly within the knowledge of experts" and "can only be proved by their testimony," which is dispositive on the issue. (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001.)

"The party challenging an evidentiary ruling bears the burden of establishing the court exceeded the bounds of reason. [Citation.] Nevertheless, evidentiary questions at summary judgment ' "are subject to the overarching principle that the [summary judgment] proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally." ' " (*Mackey, supra,* 31 Cal.App.5th at p. 657.) Thus, "a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189; see *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332 [trial court abused its discretion where it "took a very narrow and stingy view" of expert's declaration in opposition to summary judgment].)

1.    *Preliminary Contentions*

Jones raises two preliminary contentions on appeal.  He first claims that respondents admitted at the first hearing that they have no objections to his evidence.  This claim is unsupported by the record.  At the first hearing, the trial court asked counsel for the respondents if they had filed objections to Jones's evidence.  Counsel for respondents answered that they had not.  Jones asks us to construe this exchange as an admission that the respondents have no objection to Jones's evidence whatsoever.  We decline to do so.  These statements, read in the context of the whole hearing, reflect only an admission that respondents did not submit *written* objections.  They did, however, orally object at the same hearing, and their objections were sustained by the court.

Jones next claims that we cannot consider Dr. Weinreb's declaration on appeal because it is not part of the appellate record.  This claim is premised on the Declaration of the Appellate Clerk at the Superior Court, County of Imperial, filed in response to the parties' separate notices designating record on appeal.  Relevant here, the appellate clerk noted that the respondents sought the inclusion of four declarations, including Dr. Weinreb's declaration, purportedly lodged with their motion for summary judgment.  The appellate clerk clarified that these exhibits are not part of the clerk's transcript because they were returned to counsel.  Notwithstanding their return, Jones himself attached Dr. Weinreb's declaration to his opposition, a copy of which is included in the clerk's transcript.  There is thus no bar to our consideration of Dr. Weinreb's declaration on appeal.

2.    *Respondents Met Their Initial Burden on Summary Judgment*

Turning to the motion for summary judgment, respondents supported their motion with the declaration of Dr. Weinreb, who opined that their

recommendation to undergo cataract surgery, the surgical procedure itself, and the post-operative care provided were all within the standard of care. Dr. Weinreb further opined that Jones's damages were recognized risks of cataract surgery and can occur even in the absence of negligence. Respondents thus presented sufficient evidence that Jones cannot prove negligence or causation. The burden then shifted to Jones to present evidence showing the existence of triable issues of material fact.

      3.      *Jones Did Not Meet His Burden in Opposing Summary Judgment*

Because Jones submitted evidence in opposition to the respondents' motion for summary judgment, we scrutinize his evidentiary submissions less stringently than we would respondents' submissions. (*Mackey*, *supra*, 31 Cal.App.5th at p. 657.) Even under this lenient standard, we conclude that Jones did not meet his burden in opposing summary judgment.

At the first hearing on respondents' motion for summary judgment, the trial court sustained respondents' oral objections to Jones's evidence, which included his own declaration claiming to opine on the standard of care and

cause of his injuries.[2] After the trial court's specific advisement that Jones would need to submit the opinion of a medical expert and after two lengthy extensions of time to procure one, Jones ultimately supported his opposition with Dr. Wright-Scott's letter and Dr. Yaplee's progress note. Upon consideration of Jones's evidence, the court held that it was insufficient to defeat summary judgment and granted the respondents' motion accordingly. Jones contends on appeal that the trial court improperly excluded the purported opinions of his experts.

Evidence Code section 720, subdivision (a) permits a person to testify as an expert "if he [or she] has special knowledge, skill, experience, training, or education sufficient to qualify him [or her] as an expert on the subject to which his [or her] testimony relates." When a witness is testifying as an expert, his or her "testimony in the form of an opinion is limited to such an opinion as is: [¶] Related to a subject that is sufficiently beyond common

---

[2] In his opposition and at the hearing, Jones suggested that the doctrine of res ipsa loquitur applied because the photographs and the high Prednisolone dosage were "clearly signs of some type of negligence." The trial court properly concluded that Jones's claim of negligence was not "plain as day" such that it would be possible to proceed without an expert opinion. As we have noted, the res ipsa loquitur doctrine is applied sparingly in those cases where the nature of the injury suggests a high likelihood that it was caused by the defendant's negligence. (See, e.g., *Ales v. Ryan* (1936) 8 C.2d 82, 100 [sponge left in patient's abdomen by operating surgeon]; *Bowers v. Olch* (1953) 120 Cal.App.2d 108, 115 [surgical needle left in patient's abdomen]; *Ybarra v. Spangard* (1949) 93 Cal.App.2d 43, 45 [injury to neck; patient was anesthetized on operating table].) Here, it is not plainly likely from the nature of Jones's injuries that they were caused by the respondents' negligence. Because Dr. Weinreb opined that the injuries were known risks of cataract surgery and could occur even in the absence of negligence, the trial court correctly advised Jones that an expert opinion was necessary to oppose summary judgment.

experience that the opinion of an expert would assist the trier of fact . . . ." (Evid. Code § 801, subd. (a).)

The trial court is the gatekeeper, having the power to decide whether to exclude or allow expert testimony (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771-772), and " 'is given considerable latitude in determining the [expert's] qualifications.' " (*People v. Cooper* (1991) 53 Cal.3d 771, 813.) The test applied on appeal is whether the trial court properly exercised its discretion, and whether the expert disclosed sufficient knowledge on the subject to warrant admission of the opinion into evidence. (*Redevelopment Agency v. First Christian Church* (1983) 140 Cal.App.3d 690, 703.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon, supra*, at p. 773.)

The trial court did not abuse its discretion in excluding Dr. Wright-Scott's letter. It is axiomatic that an expert must have formed an opinion on a factual matter in dispute that would assist the trier of fact. (Evid. Code § 801, subd. (a).) Dr. Wright-Scott's letter, however, merely reviewed Jones's medical history and noted his decreased vision in the right eye due to macular edema, the presence of an anterior chamber lens implant in the right eye, and advanced glaucoma in both eyes. The letter was not signed under penalty of perjury, it did not set forth her qualifications, and it did not include a statement of matters she relied on. (Code Civ. Proc. § 2015.5; Evid. Code § 802.) More fundamentally, the letter did not establish a professional standard of care, it did not opine on whether the standard was met or breached, and it did not opine on whether any negligence by the respondents caused Jones's damages. (See *Scott, supra*, 185 Cal.App.4th at p. 1542.) The

letter thus held no evidentiary value as to any of the factual issues before the court.

The trial court also did not abuse its discretion in excluding Dr. Yaplee's progress note. As with Dr. Wright-Scott's letter, Dr. Yaplee's progress note spoke only to Jones's present condition. It provided no opinion on the standard of care or causation and, therefore, held no evidentiary value. We note that Jones was forewarned at the first hearing—at a time when Jones's opposition was supported only by his own declaration, photographs, and medical records—that "the opinion of doctors that they put in reports, and things like that, will not be admissible." Dr. Yaplee's progress note, as a medical record, ostensibly falls into that category of inadmissible opinions.

For these reasons, we conclude the trial court did not abuse its discretion in excluding Jones's purported expert opinions. In the absence of any other evidence that would create a dispute of material fact, Jones failed to meet his burden in opposing summary judgment. Therefore, the trial did not err in granting respondents' motion.

## C.  Jones Was Not Prejudiced When Court Held Hearing in His Absence

Lastly, Jones suggests that the trial court erred when it held the final hearing on respondents' motion for summary judgment without him present. Even assuming error, we conclude that Jones was not prejudiced.

"[P]risoners have a constitutional right of access to the courts." (*Bounds v. Smith* (1977) 430 U.S. 817, 821.) In civil actions, "[r]emedies to secure access may include:  (1) deferral of the action until the prisoner is released [citation]; (2) appointment of counsel for the prisoner [citations]; (3) transfer of the prisoner to court [citations]; (4) utilization of depositions in lieu of personal appearances [citations]; (5) holding of trial in prison [citation]; (6) conduct of status and settlement conferences, hearings on

15

motions and other pretrial proceedings by telephone [citation]; (7) propounding of written discovery; (8) use of closed circuit television or other modern electronic media; and (9) implementation of other innovative, imaginative procedures." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792-793, fns. omitted (*Wantuch*); accord, *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1483; *Hoversten v. Superior Court of San Luis Obispo County* (1999) 74 Cal.App.4th 636, 643.)

"A prisoner does not have the right to any particular remedy." (*Wantuch, supra,* 32 Cal.App.4th at p. 793; accord, *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 64.) Rather, the determination of the appropriate remedy is within the trial court's sound discretion, and we will not overturn the court's determination on appeal " 'unless it appears that there has been a miscarriage of justice.' " (*Wantuch, supra,* at p. 794; accord, *People ex rel. Reisig v. Acuna, supra,* at p. 64.)

Applying these principles, we must determine whether, considering Jones's status as an unrepresented prisoner-litigant, the trial court exercised its discretion in a manner protective of Jones's right to meaningful access to the courts to prosecute bona fide civil claims. Initially, the record establishes that Jones had bona fide claims that he pursued diligently. It also establishes that the trial court sought to ensure Jones's meaningful access to court by permitting him to appear telephonically at court proceedings and by continuing hearings when Jones was unable to attend. We find these remedies to be appropriate under the circumstances.

As for the final hearing, an apparent miscommunication with the court clerk resulted in Jones's inability to attend.[3] But rather than continuing the hearing yet again, the trial court proceeded without Jones. Assuming this to be error, Jones has not shown that he was prejudiced by it. He was present at the first hearing on respondents' motion for summary judgment, during which the trial court considered the parties' evidence and ruled on their respective evidentiary objections. He was thus not prevented from presenting his case on the merits. (*Wantuch*, *supra*, 32 Cal.App.4th at p. 795.) The hearing was then continued for a specific and limited reason: to give Jones additional time to procure and file an expert opinion. By the time of the final hearing, Jones had, in fact, procured and filed two documents that he claimed were expert opinions. With the purpose of the continuance accomplished, the respondents' motion was ripe for resolution. To the extent Jones's presence at this final hearing would have enabled him to argue for the admissibility of his purported experts' opinions, we have already determined in section B, *ante*, that his arguments lack merit. Jones has thus not shown that a miscarriage of justice occurred in his absence.

---

[3] Notwithstanding the fact that Jones called into the final hearing, he claims on appeal that the one-week continuance of the third hearing was insufficient time for him to reschedule a court call. We will assume that the California Department of Corrections and Rehabilitation generally requires additional time to accommodate court appearances. Nonetheless, the institution where Jones was housed was evidently able to accommodate his appearance at the final hearing. Jones was, therefore, not prejudiced by this brief continuance.

## DISPOSITION

The judgment is affirmed.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.